**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division**

JAMES OWENS,       *

      **Plaintiff,** *

 **v.**

          *  **Civil No.  11-cv-3295**

MAYOR AND CITY COUNCIL OF
BALTIMORE, et. al.,    *

          *

      **Defendants.**

* * * * * * * * * * * *

**MEMORANDUM OF LAW IN SUPPORT OF THE BALTIMORE
POLICE DEPARTMENT AND THE INDIVIDUAL OFFICERS'
MOTION TO STAY DISCOVERY AND BIFURCATE CLAIMS
AGAINST BPD**

In this motion, the Baltimore Police Department ("BPD") and Police Officers Jay Landsman, Thomas Pelligrini and Gary Dunnigan (collectively, the "Officer Defendants") (all collectively, the "Police Defendants") seeks, under Federal Rule of Civil Procedure 26(d) and 42(b), to stay discovery until the Supreme Court rules on the Police Defendants' forthcoming Petition for a Writ of Certiorari and bifurcate and stay discovery and trial such that Plaintiffs' claims against Officer Defendants be resolved before addressing the claims against the BPD.  BPD sought consent from Plaintiff's counsel, Plaintiff's counsel informed counsel for BPD that Plaintiff does not consent to this motion.

I.  **INTRODUCTION**

Plaintiff, James Owens, filed this 42 U.S.C. 1983 action against Baltimore City, the Baltimore City State's Attorney's Office ("State's Attorney's Office"), the Baltimore

Police Department ("BPD"),  BPD Officers Gary Dunnigan,  Jay Landsman, Thomas Pelligrini (collectively "Individual Officer Defendants") and former assistant State's Attorney Marvin Brave ("Mr. Brave"). The Plaintiff's Complaint alleges that during the course of the investigation and prosecution of the Plaintiff for the crimes of murder, rape and robbery of Ms. Colleen Williar, the Individual Officer Defendants failed to disclose exculpatory evidence as required under *Brady v. Maryland*, 373 U.S. 83 (1963) to the State's Attorney's Office. Compl. ¶ 105. The only claims Plaintiff asserted against the BPD are the §1983 *Monell* claims in Count III.

The Plaintiff filed the instant Complaint on November 11, 2011. The Police Defendants moved to dismiss the Complaint. On August 23, 2012, at the conclusion of a hearing on the Police Defendants' motion, this Court dismissed Plaintiff's Complaint. The Court initially determined that Plaintiff's claims were time barred because the limitations period for his causes of action commenced when the state court granted Plaintiff's request for a new trial, not (as Plaintiff claimed) on the date that prosecutors entered the *nolle prosequi*. Although the limitations issue disposed of all of Plaintiff's claims, the Court briefly addressed the defendants' alternative grounds for dismissal. In a series of rulings, the Court determined that the Baltimore City State's Attorneys Office was entitled to sovereign immunity, that the Individual Officers and the BPD were entitled to qualified immunity, and that Plaintiff's complaint failed to state a claim against the BPD. Plaintiff's noted a timely appeal to the United States Court of Appeals for the Fourth Circuit.

The Court of Appeals filed its published opinion on September 24, 2014, *Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379 (4th Cir. 2014).  The panel

majority ("the Majority"), over dissent from the Chief Judge (*id.* at 406-407), reached a different outcome. *Id.* The Majority ruled that Plaintiff's claims were not time barred because the limitations period for his causes of action commenced, as Plaintiff claimed, on the date that the prosecutor entered the *nolle prosequi*, not when the state court undisputedly invalidated his judgment of conviction by granting Plaintiff's request for a new trial. *Id.* at 392. The Majority arrived at this decision despite recognizing that Plaintiff's claim was ripe (he had knowledge of the violation) and that, as of the date he was granted a new trial, the *Heck* bar was removed. *Id.* at 391.

After determining that the claim was not barred by limitations, the Majority also overturned the district court's decision granting the police officers qualified immunity. *Id.* at 401. In so doing, the Majority ruled, again over dissent of the Chief Judge, that the Fourth Circuit's precedent provided, by 1988, that a police officer violates clearly established constitutional law when he suppresses material, exculpatory evidence in bad faith. *Id.* As pointed out by the Chief Judge in his dissent, the Majority's ruling ignored the spirited debated on this issue that had been waged within the Fourth Circuit and its lower courts for the past two decades. *Id.* at 407-410. On October 8, 2014 the BPD and the Individual Officers filed a timely request for rehearing *en banc*, which was denied on October 21, 2014. The Police Defendants' Petition for a Writ of Certiorari is due on or before January 20, 2015.

BPD now files a motion with the Court, pursuant to Fed.R.Civ.Proc. 42(b) ("Rule 42(b)"), as well as Fed.R.Civ.Proc 26(d) ("Rule 26(d)") to: (1) to stay discovery until the Supreme Court rules on the Police Defendant's Petition for a Writ of Certiorari; (2) bifurcate the trial of the Plaintiff's federal claims against the Officer Defendants from the

federal claims against BPD; and (3) to stay discovery against the BPD (except third party discovery against BPD related to the claims against the Officer Defendants) pending the resolution of the Plaintiffs' claims against the Officer Defendants.  As demonstrated more fully below, this bifurcation of the trial and partial stay of discovery against BPD will substantially decrease the risk of prolonged and burdensome litigation, will conserve judicial resources, will serve as a more effective method of testing the sufficiency of the Plaintiffs' claims, and lastly, will protect against the possibility of prejudice against BPD and the Officer Defendants.  Furthermore, both of issues that the Police Defendants intend to raise in their forthcoming Petition for a Writ of Certiorari are complete bars to suit- the statute of limitations and qualified immunity.  Thus, a short stay of the proceedings pending the Supreme Court's ruling on the Petition is appropriate to ensure that the Police Defendants are not needlessly subjected to the vexations of trial, which necessarily includes discovery. Therefore, the Court should grant the Rule 42(b) motion to bifurcate as well as the Rule 26(d) motion to stay discovery.

## II.     STATEMENT OF FACTS

The Plaintiff's Complaint alleges that during the course of the investigation and prosecution of the Plaintiff for the crimes of murder, rape and robbery of Ms. Colleen Williar, the Individual Officer Defendants failed to disclose exculpatory evidence as required under *Brady v. Maryland*, 373 U.S. 83 (1963) to the State's Attorney's Office. Compl. ¶ 105.  Specifically, Plaintiff claims that Individual Officer Defendants, in bad faith, before, during and after trial failed to disclose the following information: (1) that other officers gave James Thompson assurances that he would receive $1000.00 if the knife he produced to them was useful in the successful prosecution of Mr. Owens; (2)

that the individual officers failed to disclose the fact that Mr. Thompson was given assurances by them that he would not be prosecuted for any truthful information that he gave them; (3) and that immediately before Mr. Thompson's second trial testimony, the Individual Officer Defendants, interrogated Mr. Thompson for two hours, told him that he was in a lot of trouble, they were not sure if he was going to be charged with a crime, or, if he was charged, what the charge would be…." Compl. ¶¶ 111-113.   During that interrogation, which took place immediately before his second trial testimony, Mr. Thompson gave four inconsistent statements. Compl. ¶ 114.  First, he said that "he and Mr. Owens broke into the house after the murder and were not involved in any way with what happened." *Id.* Second, he said that "he and Mr. Owens had broken into the apartment but he had stayed on the first floor." *Id.* Third, he said the he and Mr. Owens had broken into the apartment, but he had hidden in the bathroom the entire time and only left to try and get Mr. Owens to leave. *Id.* Fourth and finally, he stated that he was in the room while Ms. Willar was being raped but he was not involved saying that Mr. Owens had raped and killed Ms. Willar while he masturbated at the foot of her bed. *Id.* Plaintiff claims that this information was not turned over to Mr. Brave or anyone else associated with the prosecution.  Compl. ¶¶ 111-114.

As to the BPD, in Count Three, Plaintiff claims that the Individual Officer Defendants were "aware that Baltimore City and the Baltimore Police, maintained a custom policy, and/or practice permitting their officers and detectives to withhold and suppress exculpatory and impeachment evidence in violation of their constitutional duties." Compl. ¶¶ 106, 109.   In support the Plaintiff claims:

> Reported and unreported cases from the period of time before and during the events complained of in this

> case demonstrate that officers and detectives employed by the Baltimore Police department, knowingly, consciously, and repeatedly withheld and suppressed exculpatory and impeachment information in criminal cases. In addition, upon information and belief, it is anticipated that a number of motions were filed and granted during this time period that demonstrate that Baltimore City and the Baltimore Police Department maintained a custom, policy, or practice to allow this type of behavior either directly or by facilitating it, approving it, condoning it, and /or knowingly turning a blind eye to it in reckless disregard for the constitutional rights of those injured by it.

Compl. ¶ 107.

Plaintiff claims that "[a]s a direct result of the actions of [the Individual Officers] and the custom, policies, and/or practice… of the Baltimore [] Police Department [he] was wrongfully convicted and imprisoned." Compl. ¶ 118.

Thus, in order for the Plaintiff to succeed against the BPD, he must first prove that the Individual Officers violated his constitutional rights, only then can he seek to hold the BPD responsible under a pattern and practice theory, or any other theory, recognized under *Monell*.

## III.   STANDARD OF REVIEW

Rule 42 sets forth, in plain and unequivocal language, the standard that this Court should follow for both consolidating trials, and for ordering separate trials:

> **Rule 42.  Consolidation; Separate Trials**
>
> (a) Consolidation. If actions before the court involve a common question of law or fact, the court may:
>   (1) join for hearing or trial any or all matters at issue in the actions;
>   (2) consolidate the actions; or
>   (3) issue any other orders to avoid unnecessary cost or delay.
>
> (b) Separate Trials. For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate

issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial.

Fed.R.Civ.Proc. 42(a)-(b). The Court has broad discretion in deciding whether to bifurcate claims for trial under Rule 42(b), and the exercise of that discretion will be set aside only if clearly abused. *See Dixon v. CSX Transp., Inc.*, 990 F.2d 1440, 1443 (4th Cir.), *cert. denied*, 510 U.S. 915 (1993). Bifurcation of the proceedings is appropriate if any one of the conditions set forth in Rule 42(b) is met by the circumstances of a civil action. *See James v. Frederick County Pub. Schs.*, 441 F. Supp.2d 755, 762 (D. Md. 2006); *Robertson v. Prince George's County*, 215 F. Supp. 2d 664, 665 (D. Md. 2002); *Jones v. Ziegler*, 894 F.Supp. 880, 883 (D. Md. 1996), *aff'd sub nom., Jones v. Wellham*, 104 F.3d 620 (4th Cir. 1997); *Dawson v. Prince George's County*, 896 F. Supp. 537, 540 (D. Md. 1995); *Marryshow v. Town of Bladensburg*, 139 F.R.D. 318, 319-320 (D. Md. 1991); *see also Williamson v. Prince George's County*, 2011 U.S. Dist. LEXIS 28877, Slip. Op. 1, 4-5 (D. Md., March 21, 2011)(unpublished); *Taylor v. State of Maryland* 2010 U.S. Dist. LEXIS 132969, Slip Op. 1, 4-5 (D. Md., December 16, 2010)(unpublished); *Santos v. Frederick County Bd. of Comm'rs*, 2010 U.S. Dist. LEXIS 88449, Slip Op. 1, 14 (D. Md., August 25, 2010)(unpublished).

Moreover, the decision to stay discovery rests within the discretion of the trial court. Rule 26(d) governs the timing of discovery, and it implicitly authorizes this Court to stay discovery, as appropriate, in a civil action:

> **Rule 26. Duty to Disclose; General Provisions Governing Discovery.**
> …
>
> **(d) Timing and Sequence of Discovery.**
>
> (1) Timing.

> A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order.

Fed.R.Civ.Proc. 26(d).  It is, of course, well settled that the control and management of litigation, including the power to manage discovery, is within "the inherent power" of the Court.  *Landis v. N. Am. Co*., 299 U.S. 248, 255 (1936) ([T]he power to stay proceedings is incidental to he power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."); s*ee also Link v. Wabash R. Co.*, 370 U.S. 626, 630-631 (1962)(holding that the power of a federal court to dismiss a case *sua sponte* for failure to prosecute "is governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."); *White v. Office of the Public Defender*, 170 F.R.D. 138, 149 (D. Md. 1997)(same holding-power to sanction for discovery violation).

The Court should grant the Rule 42(b) and 26(d) motion for the reasons set forth below.

IV.   **ARGUMENT**

A.   **A STAY OF DISCOVERY PENDING A DECISION BY THE U.S. SUPREME COURT ON THE PETITION FOR WRIT OF CERTIORARI THAT THE POLICE DEFENDANTS INTEND TO FILE ON OR BEFORE JANUARY 20, 2015 IS APPROPRIATE BECAUSE THE PETITION IS MERITORIOUS.**

It is well recognized that certiorari is frequently granted when there is a split among the circuits, as stated explicitly by Rule 10(a) of the Rules of the Supreme Court.

That rule provides in parT that one of the reasons for a grant of certiorari is that "a United States court of appeals has entered a decision in conflict with the decision of another United States court of appeals on the same important matter."  Furthermore, Rule 10(c) provides that an alternative reason for granting certiorari is that "a state court or a United States court of appeals has decided an important question of federal law that has not been, but should be, settled by this Court, or has decided an important federal question in a way that conflicts with relevant decisions of this Court." Here, both of those reasons are met and therefore, the Police Defendants' Petition for Certiorari is meritorious.

The decision of the Fourth Circuit in this matter conflicts with the decisions of several Circuit Courts. In accord with *Wallace v. Kato,* 549 U.S. 384, 393, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007)  and *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), this Court, the Chief Judge of the Fourth Circuit, the Sixth, Seventh, Ninth, Tenth and Eleventh Circuits have all held that the statute of limitations for a *Brady* type or other Section 1983 wrongful conviction claim accrues on the date the Plaintiff has achieved a favorable determination under *Heck* (not the common law), i.e. when the underlying conviction is invalidated. *D'Ambrosio v. Marino*, 747 F.3d 378, 385(6th Cir. 2014)(*Brady*-type claim time barred because it accrued and statute of limitations began the date the conviction was vacated); *Julian v. Hanna*, 732 F.3d 842, 849(7th Cir. 2013)(indicating that the *Brady*-type claim, but not the malicious prosecution claim *per se*,  was time-barred and Plaintiff did not contest the district Courts decision on the issue only that Defendants should be equitably estopped from pursuing the limitations defense); *Del Real v. Gomez*, 330 Fed. Appx. 110, 111 (7th Cir. 2009)(Cause of action for wrongful prosecution accrued, and the statute of limitations for

his §1983 suit began to run, when the state appellate court vacated the prisoner's conviction.); *Rosales-Martinez,* 753 F.3d at 896 (*Brady*-type claim accrued and statute of limitations began to run when his conviction was vacated.); *Smith v. Gonzales*, 222 F.3d 1220, 1222 (10th Cir. 2000) (Ex-convict's § 1983 claim based on prosecution's violation of *Brady v. Maryland* by withholding exculpatory evidence in state murder trial accrued, for statute of limitations purposes, when conviction was vacated in federal habeas corpus proceedings and case was remanded with instructions to either conduct new trial or order ex-convict's release from prison; as of that date, § 1983 suit would not have demonstrated invalidity of murder conviction, as it had been vacated, and retrial necessarily could not have implicated same constitutional violations.); *Porter v. White*, 483 F.3d 1294, 1304, n. 6 (11th Cir. 2007)(*Brady*-type claim accrued and statute of limitations began to run when his conviction was vacated.); *Owens*, 767 F.3d at 406 (Traxler, J. dissenting)("Accordingly, I would conclude that the proceedings were "favorably terminated" when Owens' conviction was vacated and he was granted a new trial on June 7, 2007."); *see also Jackson v. Barnes*, 749 F.3d 755, 761(9th Cir. 2014) ("Under *Heck* …Jackson's Fifth Amendment claim accrued when his initial conviction was overturned in March 2004."); *Cf. Owens*, 767 F.3d at  392 (Plaintiff's *Brady*-based § 1983 claim, alleging that state attorney, police department, and individual officers intentionally withheld exculpatory evidence during his criminal trial, accrued, and Maryland's three-year statute of limitations for malicious prosecution claims began to run, not when plaintiff was granted retrial, but rather when nolle prosequi was subsequently entered, thus favorably terminating his criminal case such that it was final and could not be

revived.). The Second Circuit has also cited with authority to the Tenth Circuits decision in *Smith*. *See Poventud*, 750 F.3d at 130-31 (citing *Smith*, 222 F.3d at 1222).

Given the split the Fourth Circuit's decision in this matter created a conflict in the Circuits with respect to when the statute of limitations begins for a Section 1983 wrongful conviction claim and the fact that the decision cannot be reconciled with *Wallace* and *Heck, supra,* the Police Defendant's Petition for Certiorari is meritorious.

The qualified immunity issue is likewise meritorious. First, the Supreme Court has never explicitly extended *Brady* obligations to law enforcement officers, *i.e.*, the Court has always discussed the constitutional duty under *Brady* as resting with the prosecution. *See e.g.*, *Brady v. Maryland,* 373 U.S. 83, 87 (1963)("We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."); *Giglio v. U.S.*, 405 U.S. 150, 154 (1972)("Moreover, whether the nondisclosure was a result of negligence or design, it is the responsibility of the prosecutor. The prosecutor's office is an entity and as such it is the spokesman for the Government."); *Moore v. Illinois*, 408 U.S. 786, 794-795 (1972)("The heart of the holding in *Brady* is the prosecution's suppression of evidence… There are the standards by which the prosecution's conduct in Moore's case is to be measured."); *U.S. v. Agurs*, 427 U.S. 97, 110 (1976)("Nor do we believe the constitutional obligation is measured by the moral culpability, or the willfulness, of the prosecutor."); *Kyles v. Whitley*, 514 U.S. 419, 437 (1995)("This in turn means that the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police.").

Second, the panel's decision's decision conflicts with the Supreme Court's recent holdings in *Reichle v. Howard*, 132 S.Ct. 2088, 2093 (2012) and *Staton v. Sims*, ___ U.S. ___, 134 S.Ct. 3, 5 (2013) which hold that a right is clearly established for purposes of the second prong of qualified immunity when existing precedent has placed the statutory or constitutional question beyond debate. "If judges [disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy." *Owens*, 767 F.3d at 407 (Traxler, J. dissenting) (*quoting Reichle,* 132 S. Ct. at 2096); *accord Hogan v. Carter*, 85 F.3d 1113, 1116 n.3 (4th Cir. 1996) (en banc). Under Current Supreme Court precedent the Chief Judge was correct (as was this Court) to conclude that "although judicial unanimity is not required for a constitutional right to be clearly established, that the judges of the this court so fervently disagreed in 1998 and 2000 about the existence, contours and scope of an officer's duty to disclose exculpatory evidence strongly suggests that the right was not clearly established at the time of Owens' trial in 1988." *Id.* at 410 (Traxler, J. dissenting); *see also Pinder*, 54 F.3d at 1177 ("The extensive debate provoked by this case should be proof enough that the law in this area was anything but clearly established at the time Officer Johnson gave assurances to Pinder.").

The extensive debate within this Circuit regarding the existence, contours and scope of an officer's duty to disclose exculpatory evidence in 1988, which prompted both this court and the dissent to grant officers qualified immunity in accord the Supreme Courts recent holdings, demonstrates that the Petition for Certiorari that the Individual Officers are seeking is meritorious.

Because the Police Defendants have demonstrated that their forthcoming Petition for Writ of Certiorari is meritorious, a brief stay of discovery and other deadlines pending the Supreme Court's decision is appropriate.

> **B.    A STAY OF DISCOVERY IS APPROPRIATE BECAUSE TO ALLOW DISCOVERY TO PROCEED WOULD EFFECTIVELY DENY THE POLICE DEFENDANTS THE FULL BENEFIT OF QUALIFIED IMMUNITY AND THE STATUTE OF LIMITATIONS.**

To allow discovery to proceed prior to the Supreme Court's decision as to whether to accept review of this case would effectively deprive the Defendants of their defenses and subject them to needless vexations of trial. The Supreme Court has "… made clear that the 'driving force' behind creation of the qualified immunity doctrine was a desire to ensure that 'insubstantial claims' against government officials [will] *be resolved prior to discovery*." *Pearson*, 555 U.S. at 231 (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, n. 2 (1987) (emphasis added).  This Court's mandate that qualified immunity should be resolved at the earliest stage of litigation is expressly contrary to the Fourth Circuit's extraordinary premise below that the qualified immunity defense at the Rule 12(b)(6) stage "faces a formidable hurdle" and "is usually not successful." *Cf. Pearson*, 555 U.S. at 231; with *Owens*, 767 F.3d at 396 (internal quotations omitted). Put another way, this Court has explicitly stated that "[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery."  *Mitchell v. Forsyth*, 472 U.S at 526 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

The same is true for the statute of limitations, which is a complete bar to suit, including discovery. *United States v. Kubrick*, 444 U.S. 111, 117 (1979) ("Statutes of

limitations are statutes of repose, which represent a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." (internal quotation marks omitted).

Accordingly, the Police Defendants request that this Court stay the proceedings in this matter until the Supreme Court issues a ruling on their forthcoming Petition for Writ of Certiorari.

**C.    BIFURCATION OF THE §1983 INDIVIDUAL CLAIMS AGAINST THE OFFICER DEFENDANTS FROM THE §1983 *MONELL* CLAIMS AGAINST BPD FURTHERS JUDICIAL EFFICIENCY AND ECONOMY.**

This Court has consistently, and almost uniformly, held that it is appropriate, and indeed desirable, to bifurcate §1983 *Monell* and supervisory liability claims from §1983 individual subordinate claims. *See, e.g., James*, 441 F. Supp.2d at 762 (bifurcating §1983 *Monell* claims against county from §1983 individual liability claims against police officer); *Robertson,* 215 F. Supp.2d at 665 (same); *Jones*, 894 F. Supp. at 883 (same); *Dawson*, 896 F. Supp. at 540 (same); *Marryshow*, 139 F.R.D. at 319-320 (same).

This is because §1983 *Monell* or supervisory liability claims are derivative of the §1983 individual liability claims, *i.e.*, plaintiffs cannot pursue their §1983 *Monell* or supervisory liability claims against BPD unless they first prevail on their §1983 individual claims against the Officer Defendants. *See, James*, 441 F. Supp.2d at 762 ("As stated above, however, the viability of James's *Monell* claim depends upon whether Officer Burton used excessive force."); *Robertson,* 215 F. Supp.2d at 665 ("The court's practice is based upon the well established rule that a municipality cannot be

liable…unless the plaintiff can establish that an individual employee of the municipality has committed a constitutional violation.")(citations omitted); *Jones*, 894 F. Supp. at 883 ("In this second stage of this civil action, plaintiff Jones is seeking to hold Anne Arundel County and three of its police chiefs also legally responsible for Ziegler's sexual assault."); *Dawson*, 896 F. Supp. at 540 ("If Dawson fails in his efforts to show that an active defendant violated his constitutional rights, his claims against the County likewise fail.") *Marryshow*, 139 F.R.D. at 319 ("Accordingly, a prerequisite to establishing liability of any inactive Defendant is the existence of a constitutional rights violation by one or more active Defendants.").

Put another way, judicial economy and efficiency are served by bifurcation of the §1983 individual claims from §1983 *Monell* and supervisory liability claims, because separate trials will eliminate the possibility of needless and unnecessary litigation against BPD should Plaintiffs not prevail in their §1983 claims against the Officer Defendants, for any reason.   *See James*, 441 F.Supp.2d at 762 ("Therefore, as a matter of efficient case management, discovery will be bifurcated and proceed in the first instance only as to that question."); *Dawson*, 896 F. Supp. at 540 ("Should the jury find Ricker, or other police officers involved, innocent, a trial against the County would be unnecessary."); *Marryshow*, 139 F.R.D. at 320 ("Therefore, it would not be necessary for the parties to incur the expense of preparation and trial of a case which would require the possibly extensive evidence necessary to show a custom or pattern of constitutional violations sufficient to hold the inactive Defendants liable.").

In the case at bar, the Court should grant the motion for bifurcation under Rule 42(b).  Based upon the allegations of the Complaint, it is unequivocal that the Plaintiff is

seeking liability against BPD because: (1) the Individual Officers withheld and suppress exculpatory and impeachment during his criminal trial resulting in his wrongful conviction and incarceration in bad faith; and (2) that their actions were caused by a custom, policies, and/or practice of the Baltimore Police Department. Compl. ¶¶ 106, 109, 118.

Therefore, it is clear that Plaintiffs must first show that the actions of the Officer Defendants were unconstitutional before they can pursue any §1983 *Monell* claims against BPD. *Brown v. Tshamba,* 2012 U.S. Dist. LEXIS 65033, Slip Op.  p.2 (D. Md., May 9, 2012)(unpublished)("BPD . . . cannot be found liable unless the Plaintiffs first prevail on the Section 1983 claims against [the individual officer]."). Simply stated, the Court should first require Plaintiffs to successfully prove their §1983 individual claims against the individual Officer Defendants before it allows Plaintiffs to pursue their §1983 claims against BPD.  The Court may grant the motion for bifurcation for this reason alone.

### D.    BIFURCATION WILL ALSO PROTECT AGAINST PREJUDICE TO BPD, AS WELL AS THE OFFICER DEFENDANTS.

Bifurcation also is essential to eliminate unjust prejudice to the Officer Defendants, as Plaintiffs seek to introduce evidence in their different §1983 claims against these Defendants.  For example, in order to meet the elements for their §1983 *Monell* claims, Plaintiffs will undoubtedly have to introduce evidence of prior police misconduct to show that BPD has an unconstitutional "official policy, custom or practice" that allegedly authorized the Officer Defendants to withhold exculpatory and impeachment evidence from the prosecutor in bad faith and that otherwise, BPD was "deliberately indifferent to, or tacitly authorized" prior unconstitutional conduct on the

part of the Officer Defendants and the other involved officers, with respect to this particular constitutional violation. *See, e.g., Gray v. Maryland*, 228 F.Supp.2d 628, 638 (D. Md. 2002); *Dawson*, 896 F. Supp. at 540; *Marryshow*, 139 F.R.D. at 320; *Santos*, 2010 U.S. Dist. LEXIS 88449, Slip Op. at 14; *Stewart v. Prince George's County*, 2001 U.S. Dist. LEXIS 14586, Slip Op. 1, 6 (D. Md., May 23, 2001)(unpublished); *Thompson, et al., v. Mayor and Town Council, La Plata, et al.*, 2001 U.S. Dist. LEXIS 5588, Slip Op. 1, 13 (D. Md., April 13, 2001)(unpublished).

Accordingly, bifurcation is proper to avoid prejudice and confusion amongst the jury because: (1) Plaintiffs' attempt to introduce evidence of alleged prior police misconduct inevitably leads to "side show" mini-trials regarding the constitutionality and relevance of such evidence; (2) any evidence of alleged prior police misconduct will certainly be prejudicial, and most likely inadmissible, against the Officers Defendants under the Federal Rules of Evidence 403 and 404; and (3) such evidence may or may not be admissible against BPD. *See Gray*, 228 F. Supp.2d at 638 ("[P]roof of a custom or policy by the [municipal entity] will likely require the plaintiffs to introduce evidence that would be irrelevant to the liability of the other defendants"); *Dawson*, 896 F. Supp. at 540 ("Evidence of the County's custom, practice or policy may include evidence of prior incidents of police brutality, the nature of such incidents, and the municipal policymakers' reaction to them. . . . While this evidence is most certainly relevant to Dawson's case against the County, the Court would not likely allow it in Dawson's case against Ricker.")(citations omitted); *Marryshow*, 139 F.R.D. at 320 ("In most cases, it is likely, if not inevitable, that there will be conflicting evidence regarding any alleged prior incidents of police brutality. Thus, it is highly probable that in determining a Plaintiff's

claims against inactive Defendants, the jury will have to hear, and consider, evidence in 'side show' trials regarding these matters."); *see also, Santos*, 2010 U.S. Dist. LEXIS 88449, Slip Op. at 14 ("In this district, it is common practice to bifurcate failure to train and failure to supervise claims until a constitutional violation has been established."); *Stewart*, 2001 U.S. Dist. LEXIS 14586 at 6 ("In order for the Plaintiff to establish a pattern and practice case against the [municipal entity], Plaintiff will have to submit evidence of prior incidents of [unconstitutional acts], the details associated with such incidents, and how the [municipal] policymakers…reacted to the incidents.  While the evidence is indeed relevant to the Plaintiffs' case, it is not the type of evidence the Court would allow to be introduced against the 'active' Defendants in the case.  The prejudicial effect of such evidence would clearly outweigh its probative value"); *Thompson*, 2001 U.S. Dist. LEXIS 5588 at 13 ("[E]vidence that would be relevant to prove the Plaintiffs' custom and policy claims against the municipalities would be highly prejudicial to the officers.  Under such circumstances, the best way to avoid the conflicts resulting in trying the two claims together is to bifurcate them")(internal quotation marks omitted).

In short, this Court has recognized that when a party simultaneously pursues §1983 *Monell* claims and supervisory claims, as well as §1983 individual liability claims, the conflicts are "obvious" and "[t]he best way to avoid the conflicts resulting in trying the two claims together is to bifurcate them."  *See Dawson*, 896 F. Supp. at 540.

Correspondingly, introducing evidence relating to the claims against the individual Officer Defendants would potentially be prejudicial to BPD.  For example, if the jury determines that these individual Officer Defendants are liable under §1983 to Plaintiffs, their decision might unfairly influence how they determine the issue whether

BPD had a "custom, policy, or practice" which led to the unconstitutional violation, or whether BPD, in fact, was "deliberately indifferent" in supervising the Officer Defendants. Put simply, the jury would likely be tainted by the previous disposition of Plaintiff's claims against Officer Defendants and would not be in a position to render an impartial decision toward the BPD.

In sum, this Court should grant the motion to bifurcate the §1983 *Monell* claims against BPD from the §1983 individual liability claims against the Officer Defendants to avoid unfair prejudice to both.

**E.     ANY DISCOVERY ON THE CLAIMS AGAINST BPD SHOULD BE STAYED PENDING THE RESOLUTION OF PLAINTIFFS' §1983 CLAIMS AGAINST THE OFFICER DEFENDANTS.**

Once the Court determines that bifurcation is appropriate, it should also order a stay of discovery against BPD.  A stay of discovery is appropriate because there would be no reason for Plaintiff to delve into BPD's  policies, customs and practices, or its actions in supervising the Officer Defendants if Plaintiff is not successful in their  §1983 claims against these individual officers.   *See, Gray*, 228 F.Supp.2d at 638 ("Therefore, to maximize efficiency and convenience, and minimize unfair prejudice and delay, the proceedings will be bifurcated, and discovery on the claims which require proof that Gray was injured by the custom or policy of the County will be stayed until Gray's other claims have been resolved."); *Marryshow*, 139 F.R.D. at 319 ("[T]he question of bifurcation has been raised prior to the commencement of discovery on any claims against the inactive Defendants.   In this context, it is possible to combine bifurcation for trial with the postponement…of discovery relevant only to Plaintiffs' claims against the inactive

Defendants."); *Dawson*, 896 F. Supp. at 540 ("In light of this conclusion, the Court will also grant Defendants' motion to stay discovery…").

As already discussed above, the burden of proof necessary to establish §1983 *Monell* and supervisory liability is significantly higher as compared to the proof necessary to establish §1983 liability against the Officer Defendants.  Indeed, it seems likely that the discovery in this case for the §1983 *Monell* claims against the BPD will be an enormous task (including significant searching and producing e-discovery). Accordingly, in the interest of judicial economy and efficiency, the Court should stay discovery against BPD until the Plaintiff's claims against the Officer Defendants are first resolved.

> **F.**   **THE BPD CONSENTS TO THIRD PARTY DISCOVERY WHICH IS RELEVANT TO THE INDIVIDUAL CLAIMS AGAINST THE OFFICER DEFENDANTS.**

The BPD will agree that if and when discovery commences with respect to Plaintiff's claims against the Individual Officers, Plaintiff will be permitted third party discovery against the BPD so far as the matters pertain to the Individual Officer Defendants, subject to BPD reserving the right to make specific objections and/or to file for protective orders on those matters upon which the parties cannot reach an agreement.

> **V.**   <u>**CONCLUSION**</u>

For the reasons set forth above, Police Defendants respectfully requests that this Court (1) stay discovery in this matter and all other pertinent deadlines until the Supreme Court rules on their Petition for Writ of Certiorari; (2) that the Court bifurcate Plaintiff's §1983 individual claims against the Officer Defendants from the §1983 *Monell* claims against BPD; and (3)  that this Court stay discovery against BPD pending the outcome of

Plaintiffs' constitutional claims against the Individual Officers, except it should allow third party discovery to proceed against BPD as it pertains to the claims against the Individual Officers.

Respectfully submitted,

/s/
_____
Daniel C. Beck
Federal Bar No. *29646*
Assistant City Solicitor
Office of Police Legal Affairs
Baltimore City Law Department
100 N. Holliday Street, Room 101
Baltimore, Maryland 21202
Telephone: (443) 984-7303
Facsimile:  (410) 539-0536
E-mail: Daniel.beck@baltimorepolice.org
*Attorney for Defendant BPD*

_____/s/_____
Michael Marshall (Fed. Bar No. 02587)
Chaz Ball (Fed. Bar No. 30044)
Schlachman, Belsky & Weiner, P.A.
300 E. Lombard Street, Suite 1100
Baltimore, Maryland 21202
Phone:  (410) 685-2022
Fax:  (410) 783-4771
mmarshall@sbwlaw.com
*Attorneys for Individual Officers*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 23rd day of December, 2014, a copy of the foregoing Police Defendants' Motion to Stay Discovery and to Bifurcate, and Memorandum of Law in Support of Police Defendants' Motion to Stay Discovery and to Bifurcate was forwarded via the court's electronic filing system.

_____/s/_____
Daniel C. Beck