## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### Northern Division

JAMES OWENS,                                    *

                              **Plaintiff,**    *

    **v.**                   *

                                                *        **Civil No.  11-cv-3295**

MAYOR AND CITY COUNCIL OF
BALTIMORE, et. al.,                             *

                                                *

Defendants.

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

### REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' JOINT
### MOTION TO BIFURCATE AND STAY DISCOVERY

Defendants, the Baltimore Police Department ("BPD") and Police Officers Jay Landsman, Thomas Pelligrini and Gary Dunnigan (collectively, the "Officer Defendants") (all collectively, the "Police Defendants"), by and through their undersigned counsel, respectfully submit this reply memorandum in support of their motion to bifurcate the trial and stay of discovery of the Plaintiff's claims against the BPD and for a stay of discovery until the Police Defendants' petition for certiorari has been decided.  In support thereof, they state as follows:

**A.**     **Discovery should not precede against the Police Defendants pending**
       **the Police Defendants' certiorari petition.**

     **i.**     **The Police Defendants have established a reasonable likelihood**
          **that their certiorari petition will be granted.**

In addition to the reasons stated in the certiorari petition itself, incorporated by reference herein, the Plaintiff is incorrect that the Fourth Circuit's decision in this matter did not create an intra-circuit split regarding how the statute of limitations is applied in

cases such as this and that the Court is not likely to consider the qualified immunity question. While the Police Defendants recognize that the Supreme Court's grant of certiorari is a rare occurrence, in addition to the split in the circuits and the fact that police officers' duty under *Brady*, which is clearly an issue of national importance, has never been clearly addressed by the Supreme Court, the Supreme Court has also previously discussed, but not directly answered, the statute of limitations question presented. *Wallace v. Kato,* 549 U.S. 384, 388 (2007) (if "...the commencement date for running of the statute is governed by this Court's decision in *Heck v. Humphrey*, that date may be the date on which petitioner's conviction was vacated.")(internal citation omitted). Moreover, as to the qualified immunity question presented, as explained below, the Supreme Court has taken up cases on qualified immunity in each of the last three sessions. At least three of those cases included issues related to the Circuits' incorrect interpretation of their precedents to deny the police officers qualified immunity. In each of those cases, the Court overturned the Circuits and granted the officers qualified immunity.

### a.      Limitations

While there may be some factual differences between the cases from the other circuits, the standard employed by the Fourth Circuit for determining when the statute of limitations began in this matter is in direct conflict with the standard employed by the Tenth Circuit, and is fundamentally at odds with the standard applied in the Sixth, Seventh, Ninth, and Eleventh Circuit.

Initially, the Plaintiff's reconciliation of the Fourth Circuit's decision in this matter with that of the other circuits listed above is based on a fundamental

misunderstanding of the Fourth Circuit's opinion in this matter, namely that the Fourth Circuit found that that the removal of the *Heck* bar and the statute of limitations occurred at the same time. See ECF No. 67 at p. 17 ("entry of the *Nolle Prosiqui*… finally terminated the criminal proceedings in the Plaintiff's favor, thus simultaneously commencing the limitations period *and* removing the *Heck* bar.") (emphasis added in the original).    In fact, the Fourth Circuit expressly found the opposite. The Fourth Circuit held that the removal of the *Heck* bar occurred when the Circuit Court granted Plaintiff a new trial, but the statute of limitations did not commence until later upon entry of the *Nolle Prosiqui. Owens v. Baltimore City States Attorney's Office*, 767 F.3d 379, 391 (4th. Cir. 2014)("In this case, as the Appellees point out, the *Heck* bar to suit was removed as soon as the state court invalidated Owens' conviction and granted him a new trial. But contrary to the Appellees' contention, removal of the *Heck* bar did not compel Owens immediately to proceed under § 1983. This is so because the statute of limitations for the most analogous common-law tort, malicious prosecution, did not begin to run until the proceedings against Owens were finally terminated in his favor *and could not 'be revived,'* Keeton, et al. at § 119, i.e., when the prosecutor filed the *nolle prosequi.*"). As demonstrated below, it is the separation of those two events that has created the intra-circuit conflict, placed the decision fundamentally at odds with *Heck*, and, thus, establishes good cause for staying the discovery in this matter until the Supreme Court has had an opportunity to decide whether this matter warrants its review.

In *Smith v. Gonzales*, 222 F.3d 1220 (10th Cir. 2000), the Tenth Circuit held that an ex-convict's § 1983 *Brady* claim that the prosecution withheld exculpatory evidence accrued, for statute of limitations purposes, when his conviction was vacated in a federal

*habeas corpus* proceedings, and the case was remanded with instructions to either conduct new trial or order the convict's release from prison. *Id.* at 1222. In other words, the limitations ran once the *Heck* bar was removed. *Id.* Using the Court's analysis in *Heck* as a guidepost, the Tenth Circuit reasoned that once the criminal judgment was vacated, the § 1983 suit would not produce conflicting court decisions regarding the validity of the original murder conviction. *Id.*

Likewise in *D'Ambrosio v. Marino*, 747 F.3d 378 (6th Cir. 2014), the Sixth Circuit held that a former death row inmate's § 1983 *Brady* claims accrued when the *vacatur* of his state conviction became final, *i.e.*, when the *Heck* bar was removed. *Id.* at 385-386. Contrary to Plaintiff's assertion, the Six Circuit did not hold that the statute of limitations did not begin to run until the Plaintiff received an unconditional writ of habeas corpus because that was when the underlying criminal proceedings finally terminated in D'Ambrosio's favor such that they could not be revived. Instead, the Six Circuit properly held that procedurally it had not removed the judgment of conviction until that point, which is why they still had *habeas* jurisdiction over the case. *D'Ambrosio,* 747 F.3d at 385. The unconditional writ removed the judgment of conviction, just as the Maryland Court's grant of new trial did here, and thus it was on that date, pursuant to *Heck*, that the D'Ambrosio's conviction was invalidated. *Id.; cf. Owens*, 767 F.3d at 391 ("In this case, as the Appellees point out, the *Heck* bar to suit was removed as soon as the state court invalidated Owens' conviction and granted him a new trial.") The Sixth Circuit expressly rejected the argument that the statute of limitations did not begin until the prosecution could not be re-initiated or revived. *Id.* at 384-385; *see also Harrison v. Michigan*, 722

F.3d 768, 771-772 (6th Cir. 2013)("*Heck* established a delayed accrual date [for limitations purposes] in cases involving challenges to an *invalid conviction or sentence*").

Examining the same issue in *Jackson v. Barnes*, 749 F.3d 755 (9th Cir. 2014), the Ninth Circuit held that a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence accrued, for limitations purposes, when the conviction or sentence was invalidated. The Court concluded that the statute of limitations on the plaintiff's § 1983 *Miranda*-based claim of a wrongful conviction accrued "when [the plaintiff's] first conviction was overturned in March 2004" not upon a later event. *Id.* at 761.[1]

The Ninth Circuit, again, addressed the statute of limitations question in *Rosales-Martinez v. Palmer*, 753 F.3d 890 (9th Cir. 2014), regarding a released prisoner's § 1983 *Brady* claim that police officials and prosecutors violated his constitutional rights by failing to disclose a confidential informant's criminal history during pre-trial proceedings

---

[1] The Plaintiff is incorrect that *Jackson* is distinguishable because a *Miranda* based claim is not analogous to the common tort of malicious prosecution. *Heck*, 512 U.S. at 484. Jackson's *Miranda* based claim, like Plaintiff's *Brady* based claim, is essentially a Section 1983 wrongful conviction claim, and therefore, must be analyzed in accordance with *Heck*. *Id.* It is important to note that Plaintiff has continuously maintained that his cause of action is not an actual Section 1983 malicious prosecution claim, which in this Circuit would have to arise under the Fourth Amendment, but a *Brady*-type claim for the withholding of exculpatory information that arises under Six Amendment or Due Process Clause of the Fourteenth Amendment. Plaintiff's Reply Brief in the Fourth Circuit, Case No. 12-2173, ECF No. 45 at 22-23("*The constitutional right for which Mr. Owens seeks redress against the Individual Police Defendants in this case is his Sixth Amendment right to a fair trial, in the form of the right to have exculpatory and impeachment evidence disclosed by the police to the prosecutor.*") (emphasis added). If Plaintiff is, in fact, asserting a Fourth Amendment malicious prosecution claim, the Individual Officers would still be entitled to qualified immunity on the clearly established prong and the claim would also be subject to dismissal for failure to state a claim. *See Durham v. Horner*, 690 F.3d 183, 188 (4th Cir. 2012)*(* "Although 'it is not entirely clear whether [there is] a separate constitutional right to be free from malicious prosecution, if there is such a right, the plaintiff must demonstrate both an unreasonable seizure and a favorable termination of the criminal proceeding flowing from the seizure.'"); *Wallace v. Kato*, 549 U.S. 384, 390 (U.S. 2007) ("We have never explored the contours of a Fourth Amendment malicious-prosecution suit under § 1983, *see Albright v. Oliver*, 510 U.S. 266, 270-271, 275, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994) (plurality opinion [holding that there is no due process right to be free from prosecution on less than probable cause]), and we do not do so here".); *Snider v. Seung Lee*, 584 F.3d 193, 199 (4th Cir. 2009)(While it is not entirely clear whether the Constitution recognizes a separate constitutional right to be free from malicious prosecution…); *see also* ECF No. 32 at p. 3, 8-11.

or after his conviction.  *Id.* at 895-896.  Relying on *Heck*, the Ninth Circuit held that the statute of limitations for plaintiff's § 1983 claim commenced when state court vacated his convictions.  *Id.* at 896.

Reviewing the Ninth Circuits' precedents, the District Court for the Eastern District of Washington recently read these decisions as the Police Defendants do, concluding that "[t]he relevant take-away from *Jackson* and *Rosales–Martinez* is that a § 1983 claim arising from an overturned conviction accrues, and the statute of limitations begins to run, when the conviction is formally invalidated." *Bradford v. Scherschligt*, 2014 WL 3105215,*10 (E.D. Wash. 2014) (internal citations omitted).  Further, the *Bradford* Court also relied on *D'Ambrosio v. Marino*, 747 F.3d 378 (6th Cir. 2014), for the same proposition. *Id.* In dismissing the argument that the statute of limitations did not begin until the Plaintiff received a favorable determination under the standard for common law malicious prosecution in a *Brady* type Section 1983 claim, the *Bradford* Court found:

> At bottom, Plaintiff has sought to import a favorable termination requirement into the *Heck* analysis for claims arising from an overturned conviction. This cannot be done. *Heck,* by its terms, bars an otherwise cognizable claim only until the plaintiff's conviction has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. a t 487. There is no requirement, express or implied, that the criminal proceedings be terminated on the merits in the plaintiff's favor. And while such a requirement does exist for malicious prosecution claims, it has nothing whatsoever to do with *Heck*. Accordingly, the Court concludes that the statute of limitations on Plaintiff's § 1983 claim be conviction was formally vacated by the Yakima County Superior Court on August 1, 2008. The fact that the State unsuccessfully pursued a second conviction is of no consequence to the statute of limitations analysis. Thus, the three-year statute of limitations expired on August 1, 2011. Because Plaintiff did not file this lawsuit until eighteen months later, Defendants are entitled to summary judgment.

*Bradford*, 2014 WL 3105215 at *11.

Likewise, the Eleventh Circuit in *Porter v. White*, 483 F.3d 1294 (11th Cir. 2007), held that under *Heck*, the plaintiff's § 1983 cause of action, seeking damages to redress time spent in prison following conviction at a constitutionally deficient trial, accrued, for limitations purposes, when the plaintiff's conviction was vacated. *Id.* at 1304, n. 6.[2]

The Seventh Circuit addressed the issue of when the statute of limitations accrues for a *Brady*-type claim in an unreported opinion, *Del Real v. Gomez*, 330 Fed. Appx. 110 (7th Cir. 2009) holding that the plaintiff's cause of action for wrongful prosecution accrued, and the statute of limitations for his §1983 suit began to run, when the state appellate court vacated his conviction. *Id.* at 111. The Seventh Circuit again discussed the same issue in *Julian v. Hanna*, 732 F.3d 842 (7th Cir. 2013). Writing for the majority, Judge Posner reiterated the reasoning in *Del Real*, explaining:

> Unlike the malicious prosecution claim, the *Brady* claim may have accrued when Julian was granted a new trial in September 2007, more than two years before the filing of the present suit. That was before the charges against him were dropped; and ordinarily a *Brady* claim does not accrue until that happens. But although Julian's ordeal was not over (because he was subject to being retried), his *Brady* claim was ripe. The exculpatory evidence had been revealed; the harm the alleged *Brady* violation had done could not be affected by a retrial.

*Julian*, 732 F.3d at 849.

---

[2] While the Second Circuit has not directly addressed the question of when the statute of limitations begins for a §1983 wrongful conviction claim, an *en banc* panel of the Second Circuit in *Poventud v. City of New York*, 750 F.3d 121, 134 (2d Cir. N.Y. 2014)(*en banc*), cited with authority to the Tenth Circuit's decision in *Smith v. Gonzales, supra*, thus providing a clear indication that it would join the majority of circuits holding a §1983 claim based upon a wrongful conviction accrues for statute of limitations purposes whenever the *Heck* bar is removed. *Id.* at 134.

To add to the confusion a third understanding of *Heck* can be found in the Seventh Circuit. In *Johnson v. Dossey*, 515 F.3d 778, 782 (7th Cir. 2008), the Seventh Circuit held, relying on *Heck*, that a § 1983 claim based on a *Brady* violation did not even *accrue* until the plaintiff had been acquitted, even though his conviction had previously been vacated and a new trial ordered. *Id*. The *Johnson* understanding of *Heck* is therefore in conflict with both the Fourth Circuit's decision – holding that the claim had accrued under *Heck* but that the statute of limitations had not yet begun to run – and the decisions of the other Circuits described above.

Alternatively, instead of relying on the removal of the *Heck* bar to determine when the statute of limitations period began for Owens' § 1983 *Brady* claim, the Fourth Circuit relied on the 1984 edition of *Prosser & Keeton on Torts*.  *Compare Owens*, 767 F.3d at 390 *with Heck,* 512 U.S. at 489-490; *Wallace*, 549 U.S. at 392.   The result is that the Fourth Circuit improperly and artificially separated the accrual of Mr. Owens' § 1983 claim from the running of the statute of limitations for the same claim, a rule that was flatly rejected by the Supreme Court. *See Owens*, 767 F.3d at 390; *but see Wallace,* 549 U.S. at 391 ("Under the traditional rule of accrual ... the tort cause of action accrues, and the statute of limitations commences to run, when the wrongful act or omission results in damages. The cause of action accrues even though the full extent of the injury is not then known or predictable.")(quotations and citations omitted).

The fact that Plaintiff still faced a possible retrial after his conviction was vacated and that the inculpatory evidence could still have been used against him does not make the Fourth Circuit's decision in *Owens* reconcilable with the decisions of the other circuits. In fact, in *Proventud*, *Gonzales*, and *Julian*, the Courts pointed out that *Brady*

type claims accrue, and the statute of limitations begin to run, at the time conviction is vacated, and the exculpatory information is revealed, because from that point on the constitutional violation from the first trial could not, and cannot, be replicated since the defendant must, by definition, have been made aware of the *Brady* material before *vacatur*.  Here, it is undisputed that Mr. Owens was aware of the withheld information at least by June 11, 2008. As such, the fact that Plaintiff still faced prosecution with or without the use of any inculpatory information related to the statements of Mr. Thompson, does not distinguish this case from the cases of the circuits cited above. All *Brady* requires is disclosure; it is not an exclusionary rule. Without question, to this day, the Plaintiff still faces possibility of re-charge and retrial based on the evidence used in his first trial.

Accordingly, the Fourth Circuit's opinion in this matter has created an intra-circuit split regarding accrual of the statute of limitations in cases such as these.  Several  circuit courts have interpreted *Heck* and have ruled that the statute of limitations begins for a §1983 wrongful conviction claim on the date the *Heck* bar is lifted, and the constitutionally based wrongful conviction claim is itself is "ripe," *i.e.* when the plaintiff has "a complete and present cause of action." *D'Ambrosio*, 747 F.3d at 384;  *Del Real*, 330 Fed. Appx. at 111;  *Jackson*, 749 F.3d at 761; *Rosales-Martinez,* 753 F.3d at 896; *Smith*, 222 F.3d at 1222; *Porter*, 483 F.3d at 1304, n. 6.  To the contrary, the Fourth Circuit holds that the statute of limitations for the same claim tolls until when the plaintiff achieves a determination such that the criminal charges cannot be revived, regardless of whether the *Heck* bar is removed or whether the cause of action has otherwise accrued. *Owens,* 767 F.3d at 390.

### b.        Qualified Immunity

The Supreme Court has also recently granted petitions for certiorari related to qualified immunity and consistently overturned the circuits and granted qualified immunity  to government officials against §1983 claims in the precise circumstances that the Individual Officers face here, *i.e.*, where the controlling decisions within a Circuit failed to give officials sufficient notice that particular conduct violates the Constitution. *See e.g., Carroll v. Carmin*, 135 S.Ct 348, 350 (2014) ("Here the Third Circuit cited only a single case to support its decision that Carroll was not entitled to qualified immunity— *Estate of Smith v. Marasco,* 318 F.3d 497 (3rd Cir. 2003). Assuming for the sake of argument that a controlling circuit precedent could constitute clearly established federal law in these circumstances,… *Marasco* does not clearly establish that Carroll violated the Carmans' Fourth Amendment rights.")(internal citations omitted); *Lane v. Franks*, 134 S. Ct. 2369, 2381(2014)("The relevant question for qualified immunity purposes is this: Could Franks reasonably have believed, at the time he fired Lane, that a government employer could fire an employee on account of testimony the employee gave, under oath and outside the scope of his ordinary job responsibilities? Eleventh Circuit precedent did not preclude Franks from reasonably holding that belief. And no decision of this Court was sufficiently clear to cast doubt on the controlling Eleventh Circuit precedent."); *Stanton v. Simms*, 134 S. Ct. 3, 5-6 (2013)("Notwithstanding this basic disagreement, the Ninth Circuit below denied Stanton qualified immunity. In its one-paragraph analysis on the hot pursuit point, the panel relied on two cases, one from this Court, *Welsh v. Wisconsin,* 466 U.S. 740, 750, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984), and one from its own, *United States v. Johnson,* 256 F.3d 895, 908 (2001) (*en banc*) (*per curiam*). Neither

case clearly establishes that Stanton violated Sims' Fourth Amendment rights"); *Reichle v. Howards*, 132 S. Ct. 2088, 2094 (2012)("We next consider Tenth Circuit precedent. Assuming *arguendo* that controlling Court of Appeals' authority could be a dispositive source of clearly established law in the circumstances of this case, the Tenth Circuit's cases do not satisfy the "clearly established" standard here.").

Thus, the Police Defendants have established a reasonable likelihood of success with respect to their certiorari petition.

> **ii.     The Police Defendants have also established "good cause" to stay the case until the Supreme Court decides whether to grant review this matter and will suffer irreparable harm if discovery is allowed to go forward and the petition is subsequently granted.**

Both of the defenses asserted by the Police Defendants in their petition for certiorari are absolute bars to the claims brought against the Police Defendants. The statute of limitations acts as a complete bar to all claims brought by the Plaintiff outside the ascribed time period. *Murphy v. Merzbacher*, 346 Md. 525 (1997). Compliance with periods of limitations for causes of action created by statute is a condition precedent to right to maintain the action; the period of limitations is part of the substantive right of action. *Slate v. Zitomer*, 275 Md. 534 (1975). The Supreme Court has stated that "the basic policies of all limitations provisions: repose, elimination of stale claims, and certainty about a plaintiff's opportunity for recovery and a defendant's potential liabilities." *Rotella v. Wood,* 528 U.S. 549, 555 (2000). Statutes of limitations are intended to "promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *Railroad Telegraphers v. Railway Express Agency, Inc.,*

321 U.S. 342, 348–349 (1944). They provide "security and stability to human affairs." *Wood v. Carpenter,* 101 U.S. 135, 139 (1879). We have deemed them "vital to the welfare of society," *ibid.,* and concluded that "even wrongdoers are entitled to assume that their sins may be forgotten," *Wilson v. Garcia,* 471 U.S. 261, 271(1985).

Moreover with respect to qualified immunity the Supreme Court has stated, in no uncertain terms, that that qualified immunity issues are to be resolved at the earliest possible stage of the litigation. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "Because qualified immunity is 'an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial.'" *Id.* In fact, the Court has stated that "the 'driving force' behind creation of the qualified immunity doctrine was a desire to ensure that 'insubstantial claims' against government officials will be resolved prior to discovery." *Id.* (internal citation omitted). In *Harlow v. Fitzgerald,* the Supreme Court specifically said "[u]ntil this *threshold* immunity question is resolved, discovery should not be allowed." *Harlow v. Fitzgerald,* 500 U.S. 226, 232 (1991).

The fact that both of these defenses are compete bars to the claims against the parties asserting them, and that both this Court and the dissent in the Fourth Circuit, found to be meritorious, demonstrates sufficient good cause to stay the case briefly until the Supreme Court rules on the petition because, otherwise, they are effectively lost. Moreover, should the Police Defendants be forced to engage in needless discovery, they will suffer irreparable harm by incurring unnecessary and needless litigation costs and expenses, should the petition be granted.

      **iii.**      **The requested stay will not substantially injure and unfairly prejudice the Plaintiff.**

The Plaintiff argues that a "stay of discovery will compound, without warrant, the egregious delay already suffered in Mr. Owens' case." ECF No. 67 at 24. While the Plaintiff attempts to attribute most of the delay in this matter to the Defendants, that assertion is not supported by the record.  It is undisputed Plaintiff waited almost four years after his conviction was overturned to file the instant action.  In fact, as noted by the Fourth Circuit he did not file the instant action until a few days before the third anniversary of the entry of the *nolle prosequi.  Owens,* 767 F.3d at 388. Furthermore, the Plaintiff has stated that most, if not all, of his claims are based on sworn testimony from his and Mr. Thompson's trial transcripts in his possession, therefore there should little concern, from the Plaintiff's perspective, for preservation of testimony.  ECF No. 67 at p. 30. Moreover, given the fact that the operative facts occurred nearly thirty years ago, it is unlikely that a brief delay of discovery while the Court considers the petition will have any additional effect on the memories of the witnesses or the whereabouts of witnesses and documents. Finally, in the interest of judicial economy, the Court should stay discovery because if the petition is granted, discovery may not be necessary at all.[3]

## B.   As this Court has regularly ruled, bifurcation will prevent unnecessary litigation and prejudice to both the BPD and the Individual Officers.

### i.   Bifurcation of discovery will prevent unnecessary litigation.

---

[3] The Plaintiff's proffered case, *Lowery v. Cnty. of Riley*, 2008 WL 3562061 (D. Kan. Aug. 12, 2008), is in apposite.  In *Lowery*, the Court noted that the petition for certiorari had not been filed. Id. at *1, n. 1. Here, the Police Defendants' petition has been filed.  Moreover, Mr. Brave has expressed intent to file a  in support.

Under the Federal Rules of Civil Procedure, the Court may order separate trials of any claims or issues "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." Fed.R.Civ.P. 42(b). The Court has broad discretion in deciding whether to bifurcate claims for trial, and the exercise of that discretion will be set aside only if clearly abused. *See Dixon v. CSX Transp., Inc.,* 990 F.2d 1440, 1443 (4th Cir.1993).

Although the determination of whether bifurcation is appropriate is fact specific, *Dawson v. Prince George's County,* 896 F.Supp. 537, 540 (D.Md.1995), this Court routinely orders bifurcation in § 1983 cases where, as here, a plaintiff has asserted claims against individual government employees as well as the municipal entity that employs and supervises those individuals. *See id.; see also Marryshow v. Bladensburg,* 139 F.R.D. 318, 318–19 (D.Md.1991); *Ransom v. Baltimore County,* 111 F.Supp.2d 704, 708 (D.Md.2000); *Gray v. Maryland,* 228 F.Supp.2d 628, 638 (D.Md.2002); *Fether v. Frederick Cnty.,* No. 12–1674, 2013 WL 1314190, at *8 (D.Md. Mar.29, 2013); *Gray v. Torres,* No. 08–1380, 2009 WL 2169044, at *5 (D.Md. July 17, 2009); *Savage v. Mayor & City Council, Salisbury, MD,* No. 08–3200, 2009 WL 1119087, at *5 (D.Md. Apr.22, 2009); *McIntosh v. District of Columbia,* No. 96–0200, 1997 W L 785624, at *8 (D.D.C. Dec.9, 1997). This is because municipal liability in the § 1983 context is dependent upon an initial finding that a government employee violated a plaintiff's constitutional rights. *See Monell v. Dep't of Social Servs.,* 436 U.S. 658, 694 (1978) (recognizing that under § 1983, municipalities are directly liable for constitutional deprivations only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the

14

injury"); *see also Spell v. McDaniel,* 824 F.2d 1380, 1385 (4th Cir.1987); *Dawson,* 896 F.Supp. at 540; *Humbert v. O'Malley*, 2012 WL 1066478, *2 (D.Md.,2012)("Absent a finding that at least one of the Active Defendants violated Humbert's rights, the Inactive Defendants are not liable. Thus, bifurcating the claims against the Inactive Defendants from those against the Active Defendants will serve judicial economy and convenience")(internal citations omitted). Accordingly, "[s]ection 1983 cases are good candidates for bifurcation because a subsequent trial of the municipality is necessary only if the government employees are found liable." *Okezie v. Prince George's Cnty.,* No.13–0168, 2014 W L 1334188, at * 1 (D. Md. A pr. 1, 2014).

This case is no different. Plaintiff alleges violations of his constitutional rights with regard to the withholding of exculpatory information by the Individual Officers. Compl. ¶ 105. Since the Court may not impose vicarious liability under a § 1983 action, the viability of Plaintiff's claims against the BPD hinge on his ability to show that the Officers violated her constitutional rights. *Dawson,* 896 F.Supp. at 540 (citing *Marryshow,* 139 F.R.D. at 318–20); *see also City of Los Angeles, et al. v. Heller,* 475 U.S. 796, 799 (1986) (affirming that no caselaw exists which "authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm"); *S.P. v. City of Takoma Park*, 134 F.3d 260, 274 (4th Cir. 1998) (a municipality "necessarily is not liable for any alleged injuries" where "no constitutional violation occurred"); *Belcher v. Oliver*, 898 F.2d 32, 36 (4th Cir. 1990) ("Plaintiff's effort to turn this lawsuit into one for inadequate training of personnel . . . is unavailing where there has been no underlying constitutional infraction."). If Plaintiff fails in his efforts to show that the Individual

Officers violated his constitutional rights, his claims against the BPD likewise fail. *Dawson,* 896 F.Supp. at 540; *Heller,* 475 U.S. at 799 ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point.").

The only exception to the *Heller* rule is "[w]hen a finding of qualified immunity is predicated on the basis that the law is not clearly established, it is indeed correct that there is nothing anomalous about allowing [a suit against a municipality] to proceed when immunity shields the individual defendants[, for] [t]he availability of qualified immunity does not depend on whether a constitutional violation has occurred." *Hinton v. City of Elwood,* 997 F.2d 774, 782-83 (10th Cir. 1993)(internal citations and quotations omitted); *see also Crumpe v. Bowman,* 1995 WL 255934 (4th Cir. Md. May 3, 1995).[4] However, that is not the case here as, for now, the Fourth Circuit has already decided that question against the Individual Officers.  Accordingly, any finding of qualified immunity in this case will have to be based on the lack of constitutional violation, which if found "is equivalent to a decision on the merits of the plaintiff's claim." *See Siegert v. Gilley,* 111 S.Ct. 1789, 1793–94 (1991).

The Plaintiff's claim that "the BPD's policies, practices, or customs of withholding evidence would create a constitutional violation even if the Individual Police Defendants could potentially raise a qualified immunity defense" to such actions is

---

4 Moreover, the Court can submit special interrogatories to the jury that ensure the verdict is based on the finding of constitution injury and damages or not. *Id.*

legally incorrect and also demonstrates the need for bifurcation in this case. ECF No. 67 at p. 30.

Initially, the Fourth Circuit has found that a police officers' failure to turn over exculpatory information to the prosecutor in good faith does not violate a criminal defendant's constitutional rights. *Owens*, 767 F.3d at 397 (**"**To make out a claim that the Officers violated his constitutional rights by suppressing exculpatory evidence, Owens must allege, and ultimately prove, that (1) the evidence at issue was favorable to him; (2) the Officers suppressed the evidence in bad faith; and (3) prejudice ensued**."**); *Jean v. Collins*, 221 F.3d 656, 661 (4th. Cir. 2000)("… it would be impermissible to hold the police liable for due process violations under § 1983 where they have acted in good faith."). Basically, by asserting this theory, the Plaintiff seeks to hold the BPD to the *Brady* standard applied to independent prosecutors. *Jean*, 221 F.3d at 661; *Kyles v. Whitley*, 514 U.S. 419, 438 (1995). However, that can not be done, because it is not conceivable that the BPD could be liable under a theory that the police officers it employees failed to disclose exculpatory information to the prosecutor in Mr. Owens' criminal trial in good faith, when that is not the standard applicable to its actors. Simply put, the BPD cannot be liable for causing a constitutional violation that does not exist. *See Heller*, 475 U.S. at 799 (affirming that no caselaw exists which "authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm"); *see*

*also Kopf v. Wing,* 942 F.2d 265, 269 (4th Cir.1991) (noting that municipal liability "is derivative of, but narrower than, the officers'.).[5]

> ### ii.      Evidence related to Mr. Owens' *Monell* claims will not be admissible in a trial against the Individual Police Defendants.

Bifurcation in § 1983 cases allows the court to isolate evidence regarding municipal policies and customs, which is relevant under the *Monell* analysis, but which would be highly prejudicial to the individual government employees. *Beasley,* 2010 WL 3221848, at *3 (citing *Dawson,* 896 F.Supp. at 540). This Court and the Fourth Circuit, in finding bifurcation to be appropriate, has repeatedly found that such evidence is highly prejudicial and not admissible against the Individual Officer Defendants in Section 1983 claims. *Marryshow,* 139 F.R.D. at 320 ("In most cases, it is likely, if not inevitable, that there will be conflicting evidence regarding any alleged prior incidents of police brutality. Thus, it is highly probable that in determining a Plaintiff's claims against inactive Defendants, the jury will have to hear, and consider, evidence in 'side show' trials regarding these matters."); *Stewart,* 2001 U.S. Dist. LEXIS 14586 at 6 ("In order for the Plaintiff to establish a pattern and practice case against the [municipal entity], Plaintiff will have to submit evidence of prior incidents of [unconstitutional acts], the details associated with such incidents, and how the [municipal] policymakers…reacted to the incidents.  While the evidence is indeed relevant to the Plaintiffs' case, it is not the type

---

[5] *Assuming arguendo* that the Plaintiff does attempt to pursue his proposed good faith theory against the BPD; it would exacerbate, rather than alleviate, the need for bifurcation in this matter. This is so because it would be extremely confusing for a jury to try to parse out how the BPD, the police department, could be constitutionally liable where the individuals it employees, police officers, cannot. Applying two different standards of liability to the police officers and the police department with respect to causation and the constitutional standard also would clearly create the inherent risk of an inconsistent verdict- a risk that can be alleviated by bifurcation of the proceedings.

of evidence the Court would allow to be introduced against the 'active' Defendants in the case. The prejudicial effect of such evidence would clearly outweigh its probative value"); *Thompson*, 2001 U.S. Dist. LEXIS 5588 at 13 ("[E]vidence that would be relevant to prove the Plaintiffs' custom and policy claims against the municipalities would be highly prejudicial to the officers. Under such circumstances, the best way to avoid the conflicts resulting in trying the two claims together is to bifurcate them") (internal quotation marks omitted).

Applying this same standard to Section 1983 claims where the Plaintiff has alleged that Police Officers withheld exculpatory evidence, this Court has explained that "to prove the city and police department's deliberate indifference, or a custom or policy of constitutional violations, [plaintiff] may need to submit evidence of prior misconduct by police officers, and the city and police department's response. Such evidence would unduly prejudice the Active Defendants." *See Humbert*, 2012 WL 1066478, *2 (Granting bifurcation and staying discovery on the *Monell* claim where the "[t]he § 1983 claims assert that the Active Defendants violated Humbert's rights under the Fourth and Fourteenth Amendments through … withholding exculpatory evidence."); *see also Glass v. Anne Arundel County*, 2013 WL 1120549 (D.Md.,2013) (granting bifurcation and staying discovery of the *Monell* claim where "Glass alleges that he was subjected to … malicious prosecution by the Defendants, who willfully ignored and were deliberately indifferent to overwhelming evidence of [Glass's] actual innocence.")(internal quotations omitted).

In this case, the Plaintiff's claim against the BPD certainly rests on other instance evidence of the nature that this Court has found irrelevant and highly prejudicial to the individual officers in similar cases. The Plaintiff here specifically pleads:

> Reported and unreported cases from the period of time before and during the events complained of in this case demonstrate that officers and detectives employed by the Baltimore Police department, knowingly, consciously, and repeatedly withheld and suppressed exculpatory and impeachment information in criminal cases. In addition, upon information and belief, it is anticipated that a number of motions were filed and granted during this time period that demonstrate that Baltimore City and the Baltimore Police Department maintained a custom, policy, or practice to allow this type of behavior either directly or by facilitating it, approving it, condoning it, and /or knowingly turning a blind eye to it in reckless disregard for the constitutional rights of those injured by it.

Compl. ¶ 107.

While this evidence is arguably relevant to Plaintiff's case against BPD, the Court would not likely allow it in Plaintiff's case against Defendant Officers, regardless of whether intent must be proven or not. *Dawson,* 896 F.Supp. at 540; *Humbert*, 2012 WL 1066478, *2. The prejudicial effect of such evidence would clearly outweigh its probative value. *Id.* In addition, the Court would most likely exclude evidence of an individual Defendant Officer's past conduct aimed at proving his or her character and propensities. *Id.* (referencing Fed.R.Evid. 404(a)(1)).

Furthermore, the Plaintiff's argument that the "facts of other cases in which evidence has been withheld and on policies related to the disclosure of evidence are also far less inflammatory than the analogous facts in excessive force cases" is completely absurd. ECF No. 67 at p. 31.  While the Plaintiff may believe that a federal jury lacks the intelligence to see the prejudicial nature other instances evidence, the Police Defendants

do not have such little faith in the combined intelligence of the citizens that make up the Northern Division of the District of Maryland. Whether it is other instances of excessive force or withholding exculpatory information, it is impossible for one to not consider the likelihood that after hearing several accounts about the Individual Officers and their co-workers withholding exculpatory information in other cases, if such accounts exist and can be proven (which the Police Defendants maintain they do not), that the jury would be prejudiced to believe that the Individual Officers acted in conformity therewith.

Accordingly, the type of prejudice that the BPD anticipates does, in fact, demonstrates that this case should be bifurcated. Bifurcation of the claims, not only protects the Individual Officers from prejudice and irrelevant evidence being presented against them, but necessarily insulates the verdict from a clearly appealable issue. Thus, bifurcation actually limits unnecessary litigation.

### iii.     In his Opposition, the Plaintiff has inaccurately portrayed the factual issues in this matter.

The Plaintiff's assertion that "no dispute that evidence was withheld" from the defense and "the officers' liability hinges on whether they acted in bad faith in withholding the evidence" is incorrect. ECF No. 67 at 27. The parties have not reached a point in the litigation where disputes of fact have been established, as so far, only Rule 12(b)(6) motions have been raised. More importantly, in arguing his point, the Plaintiff admits to the essential fact in this case with regards to the liability of the Police Defendants- that Mr. Brave was aware of the inconsistent stories of Mr. Thompson. Specifically, the Plaintiff states in his opposition:

> In this case, the allegations in the complaint are based on the sworn testimony of the Individual Police Defendants and Mr. Brave at the trial of James Thompson, during which they admitted to knowing about the several additional versions of Mr. Thompson's testimony that were never disclosed to Mr. Owens and that they did not believe that Mr. Thompson was a credible witness.

ECF No. 67 at p. 30.

Based on this admission of the Plaintiff, the Police Defendants are entitled to judgment as a matter of law because, as the law stands now for purposes of liability against the police for failure to disclose exculpatory information, it is absolutely irrelevant whether the defense was actually informed of the information the police officers possessed. The dispositive inquiry is whether the police officers turned over the information to the prosecutor and whether the information was material. *Taylor v. Waters,* 81 F.3d 429, 436 n. 5 (4th Cir.1996). Here, Plaintiff has admitted that Mr. Brave was aware of additional versions of Mr. Thompson's testimony and did not disclose them him or his counsel.  So to the extent that he was unaware of any of the inconsistent versions of Mr. Thompson's story, the failure of the police to disclose them to him could not be have caused Plaintiff's injury, as Mr. Brave did not disclose any of additional versions of Mr. Thompson he was aware of to the defense. Therefore, any failure on behalf the Individual Officers to disclose any additional versions of Mr. Thompson's story to Mr. Brave is immaterial, and not the proximate cause of his injury.

At the very least, the Plaintiff's admission demonstrates fundamental facts that must be established in order to find that the Individual Officers violated the Plaintiff's constitutional rights. Thus, this case is indeed similar to cases where there are questions about the use of excessive use of force, where as Plaintiffs states, there are "often significant disputes over what actually happened in the confrontation between the

plaintiffs and law enforcement that bear heavily on whether the plaintiffs can prove their claims." ECF No. 67 at p. 27.

> **iv.     Bifurcation and a stay of *Monell* discovery will ensure that the attention and resources of the parties is properly focused on whether a constitution violation occurred in this matter**.

If this case is bifurcated and all *Monell* discovery is stayed, the parties' attention will be properly focused on whether a constitutional violation occurred in this matter. After that claim is resolved, the Plaintiff may or may not pursue his *Monell* claim. Thus, staying discovery in this case is advantageous because after the individual claim is resolved, the parties and this Court will have a clearer picture of the viability of the Plaintiff's remaining *Monell* claim against the BPD. In fact, this is exactly the point of bifurcation. *See Marryshow*, 139 F.R.D. at 320; s*ee also Ricciuti v. New York City Transit Authority*, 796 F. Supp. 84, 86 (S.D.N.Y. 1992) ("[T]he potential benefit of avoiding a second trial, and of avoiding discovery on all claims, outweighs the potential cost of conducting one large trial. Convenience and judicial economy alone dictate bifurcation").

Additionally, as noted *supra*, because Plaintiff's claims against the BPD and Individual Officer Defendants do not involve common issues of law and facts there will be no substantial overlap between the discovery he will seek against the BPD for purposes of his claims against the BPD and that which is relevant to his constitutional claim against the Individual Officer Defendants. Thus, Plaintiff's argument that a stay of discovery would result in significantly more expense, effort and unnecessary delay is without merit. In fact, as noted by this Court and the Fourth Circuit, a stay of discovery as to the *Monell* claims will likely reduce expenses and efforts and avoid needless expenditures of resources. Finally, the BPD has already agreed that if the information

requested is relevant to the Plaintiff's direct claims against the Individual Officers it will produce that information pursuant to third party discovery requests. Thus, Plaintiff's claim that bifurcation of discovery will result in the unnecessary increase of litigation is completely off-base.

Accordingly, bifurcation of Plaintiff's claims and a stay of all *Monell* discovery will serve the equally important public policy goals of substantially decreasing the risk of prolonged and burdensome litigation, conserving judicial resources, providing a more effective method of testing the sufficiency of the Plaintiff's underlying § 1983 claims, and protecting against the possibility of prejudice, while at the same time preserving Plaintiff's right to pursue his *Monell* claim at a more appropriate stage of the litigation. *See James*, 441 F.Supp. 2d at 762.  In the interest of judicial economy and expediency, the Court should stay discovery against the BPD and bifurcate the *Monell* claim until the Plaintiff's claims against the Individual Officer Defendants are first resolved.

## **CONCLUSION**

For the reasons set forth above, the BPD respectfully requests that the Court bifurcate the Plaintiff's §1983 individual claims against the Individual Officer Defendants from the §1983 claims against it.  The Court should also stay discovery against the all defendants pending the outcome of the petition for certiorari, and stay the discovery against the BPD pending the outcome of Plaintiff's constitutional claims against the Individual Officer Defendants.

Respectfully submitted,

/s/
_____

Daniel C. Beck
Federal Bar No. *29646*
Office of Police Legal Affairs
Baltimore City Law Department
100 N. Holliday Street, Room 101
Baltimore, Maryland 21202
Telephone: (443) 984-7303
Facsimile:   (410) 539-0536
E-mail: Daniel.beck@baltimorepolice.org
*Attorney for Defendant BPD*

_____/s/_____
Michael Marshall (Fed. Bar No. 02587)
Chaz Ball (Fed. Bar No. 30044)
Schlachman, Belsky & Weiner, P.A.
300 E. Lombard Street, Suite 1100
Baltimore, Maryland 21202
Phone:  (410) 685-2022
Fax:  (410) 783-4771
mmarshall@sbwlaw.com
*Attorneys for Individual Officers*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 9th day of February, 2015, a copy of the foregoing was forwarded via the Court's electronic filing system.

_____/s/_____

Daniel C. Beck