IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JAMES OWENS,                                    *

      Plaintiff                           *

v.                                              *        Civil Case No. 11-3295-GLR

MAYOR AND CITY COUNCIL OF                       *
BALTIMORE, ET AL.,
                                                *
      Defendants.
                                                *

* * * * * * *

## MEMORANDUM AND ORDER

This case is a civil rights action arising from the 1988 criminal prosecution of Plaintiff,

James Owens, who was convicted of burglary and the murder of Colleen Williar, but who was

later exonerated based on DNA evidence in 2008. Mr. Owens has brought this 42 U.S.C. § 1983

action, claiming that the Baltimore Police Department, three individual officers involved in the

case against him, and former Assistant State's Attorney, Marvin Brave, violated his

constitutional rights in the course of the criminal prosecution.  This case has been assigned to me

for resolution of all discovery and related scheduling matters. (ECF No. 129); 28 U.S.C. §

636(b); Loc. R. 301.5.a (D. Md. 2014). Pending are Plaintiff's Motion to Compel Production of

Documents Withheld by the Office of the State's Attorney, Defendant Brave's Motion for Stay

or, in the Alternative, for a Protective Order, and Defendants' Partial Joint Consent Motion to

Modify the Pretrial Scheduling Order. (ECF Nos. 112, 118, 126). For the reasons that follow,

Plaintiff's motion to compel is granted in part and denied in part, Defendant Brave's motion for

stay or for a protective order is granted in part and denied in part, and Defendants' motion to

modify the scheduling order is granted in part and held in reserve in part, pending Defendants'

Reply Brief. I will address each motion in turn.

**I.      Plaintiff's Motion to Compel Production of Documents Withheld by the Office of the State's Attorney.**

Plaintiff seeks to compel the production of fifty documents from the State's Attorney's

Office prosecutorial files for his own prosecution and the prosecution of James Thompson. The

State's Attorney's office has refused to produce these documents because it contends that they

are opinion work product. Plaintiff argues that the withheld documents are not entitled to work

product protection because the State's Attorney's Office is not a party to this case and because

the withheld documents do not pertain to this case. In the alternative, Plaintiff argues that if the

Court determines that the documents are entitled to work product protection, the Court should

nevertheless order production of the documents: (1) in light of Plaintiff's substantial need for the

documents, (2) because the behavior of the attorney himself is at issue in this case, and (3)

because Defendant Brave waived work product protection of the documents by previously

testifying about his mental impression in the prosecution of Mr. Thompson.

As a preliminary matter, Plaintiff contends that the State's Attorney's Office may not

invoke the work product doctrine both because it is not a party to this case and because the

withheld documents were not prepared for this case. Although this Court does not appear to have

addressed the issue, when confronted with similar arguments in civil rights cases based on prior

criminal investigations, "many courts have found the work-product privilege unavailable." *See*

*Stamps v. Town of Framingham*, 38 F. Supp. 3d 134, 143 (D. Mass. 2014) (collecting cases). By

contrast, other courts have "extended the work-product protection to non-parties when that

vindicated the purposes of the underlying doctrine." *See id.* at 144; *Jean v. City of New York*, No.

CV-09-801(RJD)(VVP), 2010 WL 148420, at *2 (E.D.N.Y. Jan 12, 2010) (collecting cases). The

general implication of this Court's precedent does not prohibit the recipient of a Rule 45

subpoena from invoking the protection of the work product doctrine simply because the recipient

is a non-party. *See Ambling Management Co. v. University View Partners LLC*, Civil No. WDQ-

07-2071, 2010 WL 2465021, at * 2 (D. Md. June 11, 2010) ("Under Rules 26(b)(5)(A)(ii) &

45(d)(2)(A)(ii), party and nonparty respondents invoking privilege or work-product protection

must 'describe the nature of the withheld . . . things in a manner that, without revealing

information itself privileged or protected, will enable the parties to assess the claim.'"').

Moreover, the Fourth Circuit's discussion in *Duplan I* counsels strongly against prohibiting the

recipient of a Rule 45 subpoena from invoking the protection of the work product doctrine

simply because the documents at issue were not prepared for this case. *Duplan Corp. v.*

*Moulinage et Retorderie de Chavanoz*, 487 F.2d 480, 484 (4th Cir. 1973) (*Duplan I*)

(recognizing "the qualified immunity of work product materials in a subsequent case as well as

that in which they were prepared"). I will thus take the latter approach and assess whether

application of the work product doctrine in this case would vindicate its underlying purposes, as

set forth in *Hickman v. Taylor*, 329 U.S. 495 (1947).

Pursuant to the Supreme Court's decision in *Hickman v. Taylor*, courts have held that the

work product doctrine generally serves three purposes: (1) it protects an attorney's ability to

formulate legal theories and prepare cases; (2) it prevents opponents from "free-loading" off of

their adversaries' work, and (3) it prevents interference with ongoing litigation. *See Stamps*, 38

F. Supp. 3d at 144 (quoting *Jean*, 2010 WL 148420, at *2). Because the criminal case against

Plaintiff terminated long ago and there is no possibility that Plaintiff will face further prosecution

for the same crimes, application of the work product doctrine in this case would not vindicate the

second or third purposes of the doctrine. Application of the doctrine would, however, vindicate

its first underlying purpose by protecting the willingness of attorneys to record and retain their mental impressions, conclusions, opinions, and legal theories concerning litigation. Indeed, the work product withheld by the State's Attorney's Office in this case consists solely of opinion work product, which the Fourth Circuit has repeatedly held is "absolutely immune" or "nearly absolutely immune" from discovery. *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co., Inc.*, 967 F.2d 980, 984 (4th Cir. 1992) ("absolutely immune"); *In re Allen*, 106 F.3d 582, 607 (4th Cir. 1997) ("nearly absolute immunity"). Accordingly, unless Plaintiff has identified an "extraordinary circumstances" that warrants production of the opinion work product withheld in this case, the Court cannot order the State's Attorney's Office to produce the documents. *See In re Allen*, 106 F.2d at 607.

Plaintiff's first argument—that the State's Attorney's Office should be ordered to compel the documents that it has withheld under the work product doctrine due to Plaintiff's substantial need and his inability to obtain the equivalent information by alternative means—is misplaced. Although, production of *fact* work product may be compelled upon a showing of substantial need, the Fourth Circuit has made clear that such production should not include *opinion* work product. *In re Allen*, 106 F.3d at 607 ("In contrast to *fact* work product, which is discoverable 'upon a showing of both a substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship,' *opinion* work product 'enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances.'"). Accordingly, Plaintiff's substantial need argument is not a basis upon which this Court could order the State's Attorney's Office to produce what it contends is entirely opinion work product.

Alternatively, Plaintiff argues that Defendant Brave's testimony at a preliminary motions hearing against James Thompson, a witness in the prosecution of Plaintiff who also was

ultimately charged for his involvement in Ms. Williar's murder, which touched on his mental impressions and legal opinions during the pendency of his criminal prosecution of Plaintiff, constituted a waiver of opinion work product protection in this case. Contrary to the assertion in the State's Attorney's Office's surreply, "[T]he Fourth Circuit clearly has recognized that opinion work product protection, however exalted and immune from discovery, may nonetheless be waived." *Continental Gas Co. v. Under Armour, Inc.*, 537 F.Supp.2d 761, 771 (D. Md. 2008). In order to constitute a waiver, the "actions effecting the forfeiture or waiver must be consistent with a conscious disregard of the advantage that is otherwise protected by the work product rule." *Doe v. United States*, 662 F.2d 1073, 1081 (4th Cir.1981). In *Doe*, the Fourth Circuit went on to explain that "when an attorney freely and voluntarily discloses the contents of otherwise protected work product to someone with interests adverse to his or those of the client, knowingly increasing the possibility that an opponent will obtain and use the material, he may be deemed to have waived work product protection." *Id.* Under *In re Martin Marietta Corp.*, 856 F.2d 619 (4th Cir. 1988), however, the scope of the waiver is dependent upon the type of work product disclosed. Where the disclosure involves fact work product, the waiver is broad and pertains to all information related to the same subject matter. *Martin Marietta*, 856 F.2d at 623. By contrast, where the disclosure involves opinion work product, the waiver is "limited" and pertains to only the information actually disclosed.

The information actually disclosed by Defendant Brave at Mr. Thompson's pretrial hearing (ECF No.127-3 at 3-31, ("Hrg. Tr.")) included: his opinion as to the veracity of Mr. Thompson's accounts of events (Hrg. Tr. 64:18-65:7. 66:12-68:1, 72:18-22), whether he considered Mr. Thompson a suspect during his investigation and prosecution of Plaintiff (Hrg. Tr. 50:11-17), his theory on why Mr. Thompson had concocted his "somewhat unbelievable

story" (Hrg. Tr. 50:17-51:7), whether he intended to recall Mr. Thompson after Mr. Thompson

first testified at Plaintiff's trial (Hrg. Tr. 54:13-18), his mental impression regarding his own

failure to eliminate Mr. Thompson as a suspect (Hrg. Tr. 56:21-57:13), his mental impression

upon learning that the pubic hairs found at the crime scene likely belonged to Mr. Thompson (Tr.

58:11-59:9), what he considered the major facts against Plaintiff to be at the time he was

prosecuting Plaintiff (Hrg. Tr. 61:17-62:23), whether he considered Mr. and Mrs. Thompson to

be his chief witnesses (Hrg. Tr. 62:25-63:3), his mental impression regarding his "position" in

the midst of Plaintiff's trial (Hrg. Tr. 64:1-3), whether he believed at various points that Plaintiff

"participated in that murder" (Hrg. Tr. 64:10-11), and at what point he reached the conclusion

that Mr. Thompson was chargeable with first degree murder (Hrg. Tr. 69:1-4). The information

actually disclosed by Defendant Brave at Mr. Thompson's trial (ECF No. 127-3 at 33-83 ("Trial

Tr.")) included: his opinion as to the "important" and "unbelievable" aspects of Mr. Thompson's

original police statement (Trial Tr. 174:13-176:8), why he did not consider Mr. Thompson a

suspect at the outset of the case (Trial Tr. 175:12-23), his mental impression upon realizing that

Mr. Thompson's second trial testimony was inconsistent with the timeline of events in several

respects (Trial Tr. 189:1-190:21), the rationale underlying his decision to test Mr. Thompson's

public hair against those found at the crime scene (Tr. 195:13-196:22), the moment Mr.

Thompson became a suspect in his opinion (Tr. 199:13-24), and his mental impression upon

being handed a note during Mr. Owens' trial informing him that Mr. Thompson had confessed

(200:22-201:18).

Notably, in a conference between the counsel and the judge at Mr. Thompson's trial, the

judge described Defendant Brave's testimony as a summary of his "thought processes into the

prosecution of [Plaintiff]," and as "his thought processes at the time that led him to considering

Mr. Thompson as a suspect and the basis for those conclusions . . . how he and why he came to certain decisions, conclusions and took certain actions." (Trial Tr. 193:21-194:18). Through his testimony at Mr. Thompson's trial, it is thus apparent that Defendant Brave waived protection of his opinion work product voluntarily and "with a conscious disregard of the advantage that is otherwise protected by the work product rule." *Doe*, 662 F.2d at 1081. Pursuant to the Fourth Circuit's opinion in *Martin Marietta*, that waiver is necessarily limited in scope to the particular subjects about which Defendant Brave actually disclosed his mental impressions and legal opinions. However, as the preceding summary illustrates, Defendant Brave's actual disclosure was pervasive. Accordingly, to the extent that the documents withheld by the State's Attorney's Office include notes authored by Defendant Brave pertaining to the subjects covered by Defendant Brave's testimony, I will grant Plaintiff's motion to compel and order the State's Attorney's Office to produce those documents. Defendant Brave's waiver, however, does not extend to documents that contain the opinion work product of other attorneys. Because Plaintiff has not offered any "extraordinary circumstances" warranting the production of those documents, I will deny Plaintiff's motion to compel the remainder of the opinion work product documents withheld by the State's Attorney's Office.[1]

## II.     Defendant Brave's Motion for Stay or, in the Alternative, for a Protective Order

Defendant Brave seeks a protective order staying his deposition, currently noted for October 15, 2015, pending the outcome of his Rule 12 motion to dismiss (ECF No. 106). In the event that the Court does not order his deposition stayed, Defendant Brave instead seeks a protective order to prevent Plaintiff from inquiring into his "discretionary decision making,

---

[1] The Court need not confront Plaintiff's argument pertaining to the fact that Defendant Brave's conduct is at issue in this case for two reasons. First, because the Court is ordering production of the documents authored by Defendant Brave on the basis of waiver, it need not consider whether production of those documents would also be appropriate under Plaintiff's argument that Defendant Brave's conduct is at issue in this case. Second, the fact that Defendant Brave's conduct is at issue in this case has no bearing on the Court's determination regarding opinion work product authored by other attorneys.

thought processes, opinions, and mental impressions concerning his conduct taken in preparation for or related to the prosecution of the plaintiff, James Owens."

First, Defendant Brave contends that a stay of his deposition is appropriate because if his Rule 12 motion is successful, it will be fully dispositive of all of the claims against him. As Plaintiff notes in his opposition, however, even if Defendant Brave's Rule 12 motion is successful and he is granted absolute immunity, Plaintiff will nevertheless seek to depose him as a fact witness. In light of that fact, the deposition that Defendant Brave seeks to stay will not become unnecessary in the event that his Rule 12 motion is granted. Defendant Brave's argument that Plaintiff will not be prejudiced by the stay of his deposition is likewise unpersuasive. Because there is no guarantee that the Court will rule on Defendant Brave's Rule 12 motion before the close of discovery, a protective order staying his deposition pending the outcome of that motion could result in further modification of the discovery deadline, the dispositive motions deadline, and even the trial date. Accordingly, the pendency of Defendant Brave's Rule 12 motion does not constitute "good cause" to stay his deposition, and to the extent that his motion seeks an order staying his deposition, it is denied. *See* Fed. R. Civ. P. 26(c)(1).

Defendant Brave also asserts that, if the Court does not order a stay of his deposition, it should instead enter a protective order prohibiting Plaintiff from inquiring into his "discretionary decision making, thought processes, opinions, and mental impressions" during his prosecution of Plaintiff. Defendant Brave claims that he cannot be compelled to answer questions on those subjects due to the public policy considerations underlying his claimed absolute immunity from suit, and under the common law work product doctrine. As discussed above, however, Defendant Brave waived protection under the common law work product doctrine when, at the pretrial hearing and trial of Mr. Thompson, Defendant Brave extensively disclosed his discretionary

decision making, thought processes, opinions, and mental impressions pertaining to Plaintiff's prosecution. Thus, irrespective of whether Defendant Brave is or is not immune from suit on the basis of his discretionary function, he has waived any claim that any such immunity also extends to protect him from further questioning about those disclosures.

Defendant Brave contends that the public policy underlying his asserted prosecutorial immunity from suit extends to create a "testimonial privilege," which protects him from being compelled to testify regarding the conduct he took in his alleged quasi-judicial capacity. The Fourth Circuit case cited by Defendant Brave as establishing the testimonial privilege involved legislative immunity under the speech and debate clause, and did not involve circumstances under which the legislators had previously testified at length on the issues involved in the suit. *See Schlitz v. Virginia*, 854 F.2d 43 (4th Cir. 1988), *overruled as applied to municipalities by Berkley v. Common Council of City of Charleston*, 63 F.3d 295 (4th Cir. 1995). Defendant Brave has not cited any other caselaw supporting his contention that if he is granted immunity from suit, that immunity should confer a "testimonial privilege" which extends to protect him from any and all questions regarding discretionary decision making, thought processes, opinions, and mental impressions pertaining to Plaintiff's prosecution, in the face of his prior testimony on many of those subjects.

Finally, the Court notes that although Defendant Brave's testimony about to his discretionary decision making, thought processes, opinions, and mental impressions pertaining to Plaintiff's prosecution was extensive, it was not complete. In light of the "limited" scope of waiver of opinion work product, Plaintiff is prohibited from asking Defendant questions about his opinion work product that go beyond the scope of his prior testimony. Accordingly, to that limited extent, Defendant's motion for a protective order is granted.

### III.    Defendants' Partial Joint Consent Motion to Modify the Pretrial Scheduling Order

Finally, Defendants have filed a Partial Joint Consent Motion to Modify the Pretrial Scheduling Order. (ECF No. 126). The motion indicates that all parties consent to extend the discovery deadline for the limited purpose of conducting the depositions that have been noted for dates beyond that deadline. Defendants also request a general 30 day extension of the scheduling order, including the discovery and dispositive motions deadlines. Plaintiff opposes extending the discovery deadline for any purpose other than the three depositions already noted and extending the dispositive motions deadline. Because Defendants are entitled to reply to Plaintiff's Opposition, Defendants' general request to extend the discovery and dispositive motions deadlines are not yet ripe. However, I will grant Defendant's Partial Joint Consent Motion to Modify the Pretrial Scheduling Order to extend the discovery deadline for the limited purpose of conducting the depositions currently scheduled for after that deadline. Defendants' motion will remain pending and I will reserve ruling on the other requests in Defendants' motion pending Defendants' reply brief.

### IV.    Conclusion

For the foregoing reasons, Plaintiff's Motion to Compel Production of Documents Withheld by the Office of the State's Attorney (ECF No. 112) is GRANTED IN PART AND DENIED IN PART, Defendant Brave's Motion for Stay or, in the Alternative, for a Protective Order (ECF No. 118) is GRANTED IN PART AND DENIED IN PART, and Defendants' Partial Joint Consent Motion to Modify the Pretrial Scheduling Order (ECF No. 126) is GRANTED IN PART AND HELD IN RESERVE IN PART PENDING REPLY BRIEF.

Dated: October 13, 2015                    _____/s/_____
                                           J. Mark Coulson
                                           United States Magistrate Judge