# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JAMES OWENS, | * | |
| *Plaintiff*, | * | |
| v. | * | Civil Action No: 11-cv-03295-GLR |
| BALTIMORE POLICE DEPARTMENT, *et al.*, | * | |
| | * | |
| *Defendants*. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## DEFENDANT MARVIN BRAVE'S RESPONSES TO PLAINTIFF'S REQUESTS FOR ADMISSIONS

Pursuant to Rule 36 of the Federal Rules of Civil Procedure, Defendant Marvin Brave states as follows for his responses and objections to plaintiff James Owens's requests for admission.

## PRELIMINARY STATEMENT

The following responses are based on the Defendant's knowledge, information, and belief, and are complete to the best of his knowledge at this time. The Defendant assumes no obligation to supplement or amend voluntarily these responses beyond applicable legal requirements to reflect information, evidence, documents, or things discovered following service of these responses. Furthermore, these responses were prepared based on the Defendant's good faith interpretation and understanding of the plaintiff's requests and are subject to correction for inadvertent errors or omissions, if any. These responses are given

his witness files for Larry Oliver and Samuel Denato both contained the February 9, 1988 memorandum.

**Request 8:**   On February 29, 1988, Defendant Brave visited the Baltimore Police Department crime laboratory with several detectives.

**Response 8:** Subject to and without waiving his General Objections, Defendant admits only that, as he testified at the trial of James Thompson, he and Detective Thomas Pellegrini visited the Baltimore Police Department crime laboratory on February 29, 1988. Defendant cannot presently recall with specificity whether any other detective was present at the crime laboratory at that time, and so lacks present personal knowledge as to whether there were "several detectives" present, and therefore denies that portion of Request 8.

**Request 9:**   While there, Defendant Brave learned that there was a very high likelihood that the pubic hairs from James Thompson matched those found on Colleen Williar.

**Response 9:** In addition to his General Objections, Defendant objects on the ground that the Request is vague and ambiguous as to the meaning of "very high likelihood." Subject to and without waiving these objections, Defendant admits only that, as he testified at the trial of James Thompson, while at the Baltimore Police Department crime laboratory on February 29, 1988, he spoke with police chemist Mark Profili, and Mr. Profili stated that because he did not have a full pubic hair with roots he could not say for

sure if the hairs matched those found on Colleen Williar, but stated that "it sure looks like I may have a match here."

**Request 10:** Defendant Brave did not inform David Eaton that there was a very high likelihood that the pubic hairs from James Thompson matched those found on the victim.

**Response 10:** Subject to and without waiving his General Objections, denied in substance. Although Defendant Brave may not have used the precise characterization contained within Request 10, including the ambiguous phrase "very high likelihood," when Defendant returned to the courtroom after speaking with Mr. Profili, he informed David Eaton of the substance of his conversation with Mr. Profili concerning the testing of Mr. Thompson's pubic hair and blood.

**Request 11:** Defendant Brave did not inform David Eaton that James Thompson told multiple stories to the detectives who were questioning him on February 29, 1987.

**Response 11:** Subject to and without waiving his General Objections, admitted as literally stated. However, to the extent Request 11 is intended to imply that Defendant Brave was aware that James Thompson told multiple stories to detectives who questioned him on February 29, 1987, or any other date, Request 11 is denied. Defendant has no knowledge of any questioning of James Thompson on February 29, 1987. To the extent this Request is intended to refer to questioning on February 29, 1988, Defendant was not told of the alleged multiple stories that James Thompson told to the detectives on that date,

9

and so could not have informed anyone else about them. Moreover, any information Defendant received from the detectives concerning their questioning of James Thompson on February 29, 1988 was told to him in David Eaton's presence and, thus, Defendant did not fail to inform Mr. Eaton of any information Defendant learned about that questioning.

**Request 12:** Defendant Brave did not inform David Eaton of the substance of the multiple stories that James Thompson told the detectives who were questioning him on February 29, 1987.

**Response 12:** In addition to his General Objections, Defendant objects on the ground that the Request assumes the truth of matters of which Defendant lacked knowledge at the time. To the extent Request 12 is intended to imply that Defendant Brave was aware that James Thompson told multiple stories to detectives who questioned him on February 29, 1987, or any other date, or was aware of the substance of those alleged multiple stories, Request 12 is denied. Defendant has no knowledge of any questioning of James Thompson on February 29, 1987. To the extent this Request is intended to refer to questioning on February 29, 1988, Defendant was not told of the alleged multiple stories that James Thompson told to the detectives on that date, nor was he told of the substance of those alleged multiple stories, and so could not have informed anyone else about them. By way of further response, any information Defendant received from the detectives concerning their questioning of James Thompson on February 29, 1988 was told to him in David Eaton's presence and, thus, Defendant did not fail to inform Mr. Eaton of any information Defendant learned about that questioning.

10