# Exhibit 39

IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

STATE OF MARYLAND

vs.

ANTOINE PETTIFORD,

Defendant.

INDICTMENT NO. 194273007

OFFICIAL TRANSCRIPT OF PROCEEDINGS

(Postconviction Hearing - Excerpt 2-of-2)

Baltimore, Maryland

Tuesday, July 28, 1998

BEFORE:

HONORABLE ELLEN M. HELLER,
ASSOCIATE JUDGE

APPEARANCES:

For the State:

NANCY POLLACK, ESQUIRE

For the Defendant:

MICHELLE MARCS, ESQUIRE

RECORDED BY: VIDEOTAPE
CHRISTOPHER W. METCALF, CVR
Official Court Reporter
507 Courthouse West
Baltimore, MD 21202



```
 1              THE COURT:  Dante Todd's statement.  Where
 2   is Dante Todd's statement?
 3              THE WITNESS:  He was interviewed on May
 4   the 1st, Your Honor.
 5              THE COURT:  May the 1st?
 6              THE WITNESS:  5/1/94.
 7              THE COURT:  Of '94.
 8              THE WITNESS:  Yes, ma'am.
 9              THE COURT:  Where is that in evidence?
10   I've not seen that statement.
11              MS. MARCS:  It wasn't given to me.
12              THE COURT:  I don't have it anywhere.
13   This is the first I've learned that there was a May 1,
14   '94, statement of Dante Todd.  We had Officer John
15   Webb's report of Dante Todd.  I mean --
16              MS. MARCS:  This is the case.
17              THE COURT:  -- this is the whole motive of
18   the case that you're saying was turned over to the
19   prosecutor, and as of this moment in the afternoon of
20   the second day of the postconviction, I'm just learning
21   of it?  Where is the May 1st, '94, statement?
22              THE WITNESS:  I have it here in my file,
23   ma'am.
24              THE COURT:  Would you mark it, please?
25   Ms. Pollack, take it and give it to the clerk and have
```

```
 1    it marked.
 2              MS. POLLACK:  Can we get the opportunity
 3    to make a copy, Your Honor?
 4              THE COURT:  Afterwards.  I want to see it
 5    now.
 6              MS. POLLACK:  Okay.
 7              THE COURT:  Are you saying this statement
 8    was given to Ms. Pollack?
 9              THE WITNESS:  Yes, ma'am, Your Honor, the
10    entire -- all the witness statements and offense
11    reports to my superiors are all copied and given to the
12    prosecutor and his name is mentioned in the prosecution
13    report.
14              THE COURT:  But this is information that
15    we're hearing didn't come forward until the federal
16    trial that, in fact, the State had in its possession
17    prior to the state trial, unless I'm misinterpreting
18    something.
19              We have that marked as State's exhibit
20    number, what?
21              THE CLERK:  One.
22              THE COURT:  All right.  And then it will
23    be moved into evidence and then may I see it once it's
24    marked, please.
25                        (State's Exhibit No. 1 was
```

```
 1                    marked for identification
 2                    and received in evidence.)
 3           THE COURT: All right. Now, although we
 4   don't know "Meat's" name, the statement does -- and
 5   I'll make copies for everyone -- give a description of
 6   "Meat," a very specific one. He's a Black male, short,
 7   dark complexion, heavy build, short hair, approximately
 8   25 years, and wears glasses, drives a money-green four-
 9   door Legend with gold trim, with Maryland tags. "Meat"
10   has a shop on Port Street between Federal and Lanvale.
11   So that certainly is sufficient evidence for a
12   reasonable person to try to find whoever "Meat" was.
13           This is quite a remarkable statement and I
14   am going to have my clerk Xerox it and hand it. It
15   certainly details in very specific detail the movement
16   of both Dante Todd and Oscar Lewis up to the time of
17   the shooting.
18           THE WITNESS: That's correct.
19           THE COURT: And it certainly puts in great
20   detail "Meat's" involvement with his friends.
21           Do you want to continue your questioning,
22   or do you want to wait until -- have you seen --
23           MS. POLLACK: I would rather wait, Your
24   Honor.
25           THE COURT: Ms. Pollack, it just brings up
```

1  an issue that was raised this morning. If, in fact,
2  the statement was given to you, in all candor, looking
3  at it in the widest way, the issue becomes why it
4  wasn't disclosed.
5          MS. POLLACK: I understand.
6          THE COURT: And then that brings up the
7  issue of your getting on the stand and maybe someone
8  else from your office handling this because you can't
9  get on the stand and testify and represent the State at
10 the same time.
11         MS. POLLACK: Well, if the Court wants to
12 hear from me --
13         THE COURT: I think I'm going to have to
14 because the issue -- the whole issue in this case is
15 Brady.
16         MS. POLLACK: May I have a moment, Your
17 Honor?
18         THE COURT: Sure.
19         MS. POLLACK: Thank you.
20         (Pause.)
21         MS. POLLACK: Your Honor, is the Court
22 saying that it wants to hear from me for the limited
23 purpose of talking about why certain things were not
24 disclosed, or is it saying that it wants me to give up
25 handling the case and not argue it either?

THE COURT: It's not my giving up the case. There are certain rules of professional responsibility that govern our conduct. When an attorney is placed on the stand and that attorney's conduct, behavior, decisions are at issue, that attorney no longer represents him or herself in a case; someone else does. I mean, it was raised this morning, actually, by Ms. Marcs, but now it's become acute.

The statement is a very detailed statement about the motive behind the killing, the people who were involved in the killing. I don't think anyone could review this statement and say it should not have been disclosed to the defense. I've been told by the detective sitting on the stand it was disclosed to you and that is the whole issue. A man who is serving life plus 20 years consecutive is asking for a new trial based on the fact that certain information wasn't turned over to his attorney.

So it's not the Court wanting you to handle it or not handle it, but the issue becomes, then, why you didn't turn it over and you can't question yourself, and, therefore, I think your office has no choice but to have someone else handle this. I don't see how anybody else could view it differently.

MS. POLLACK: Then what we need -- then,

```
 1    Your Honor, I'm going to have to request a continuance.
 2              MS. MARCS:  May I say something, Your
 3    Honor?  I asked Ms. Pollack when we went back and forth
 4    about her prosecutor's file whether I could have
 5    certain information.  She refused to give it to me.
 6    Ultimately, she did give it to me and that's what I've
 7    had and that's what I've prepared my petition with.
 8              She told me as early as this morning -- I
 9    subpoenaed her and her file, and I said to her this
10    morning in this courtroom, "Is there anything in your
11    file that I don't have?" and she told me that the only
12    thing that I didn't have was her work product.  Now, at
13    some point, it becomes ridiculous.
14              THE COURT:  All right.  Let's back up
15    again.  I would like to -- I have the detective here.
16    Were there any other -- what were the statements that
17    you gave to the State?  Do you have them with you?
18              THE WITNESS:  There's a copy of the
19    prosecution report that we initially give to the
20    prosecutor's office and it has all the statements of
21    everybody that we interviewed and all those are given
22    to them, name, address, and so forth, and it's all
23    given to them in a packet.
24              THE COURT:  That lists everything and
25    that, as well, lists the Dante Todd statement --
```